MAINE BENEFIT ASSOCIATION, in equity *vs.* GEORGE W. PARKS.

Androscoggin.    Opinion December 10, 1888.

*Equity. Parties. Life Insurance. Application. False Statement. Cancellation. Verdict.*

A bill in equity commenced in the life-time of a husband and his wife, to annul an insurance policy issued on her life for his benefit, may, after her death during the pendency of the proceeding, be prosecuted to final decree against the husband alone, as he is, besides the complainants, the only person interested.

A policy, issued upon statements of the insured in an application for a life insurance that the applicant had good health and usually had good health, whether the statements be regarded as warranties or representations, may be cancelled and declared void by a court of equity, upon proof that such statements were in fact untrue.

The health of the body required to make the policy attach, does not mean perfect and absolute health. That seldom exists. It is that which would ordinarily and reasonably be regarded as good health. There is obviously a close distinction, though recognizable, between incipient disease, or disease in its first stages, a condition which complainants contend existed, and merely a bodily condition which is susceptible to the contraction of disease which defendant contends existed. A weak person may be well and a strong person sick. As it is difficult to determine the question by any definite general rule it becomes usually a question for the jury to determine on the facts peculiar to the case. When the questions propounded by the company in the examination of the applicant have been answered in absolute good faith and there are no reasonable grounds to suspect fraud, the questions and answers should be construed liberally in favor of the insured.

If the jury, to whom the facts are submitted in the case tried on the equity side of the court, render a clearly erroneous and unjust verdict, the court may not only set the verdict aside, but may in its discretion pronounce final judgment in the case adversely to the verdict.

ON REPORT, on bill in equity to annul a policy of life insurance issued April 30, 1887, upon the life of Alice J. Parks whose beneficiary was the defendant, and to whom it was made payable. She died July 21, 1887. Issues of fact were framed by the court and tried to a jury, who rendered a verdict for the defendant.

The issues of fact were, first, was Alice J. Parks on April 30, 1887, of good health; second, had she usually been of good health prior to that date. Answer, yes.

After the verdict the plaintiff filed a motion to set the verdict aside, and that the bill be sustained notwithstanding the verdict.

*George C. and Charles E. Wing*, for complainant.

Bills of this nature are frequently maintained in our courts. There are no serious questions of law in issue between the parties.

The bill may be sustained, notwithstanding the death of Mrs. Parks, against her husband, the beneficiary, her estate having no interest in the contract.

The court may decree whatever they think justice and equity require, regardless of the verdict—for a verdict of a jury upon an issue framed in equity is only advisory and not binding upon the conscience of the court.

Plaintiffs seek to annul the contract, because certain material facts, stated in the application, peculiarly within the applicant's

knowledge, were untrue; that no contract would have been made, if the true facts had been stated, and the true state of her health had been represented at the time.

These statements were warranties in law, but if regarded as representations only, they cannot avail the defendant. They were untrue, and she knew them to be untrue when she made them.

From the nature of her disease, she must have known of its existence; she was treated as late as April 13, for the cough inherited from her first illness, and she told her attending physician, in May, that she had never got over her cough or nightsweats. He then found her in an advanced stage of consumption, and thinks she had been suffering from it, six or eight weeks. He notified the company at once of this fact. Immediate investigation was made, and an offer to rescind the contract was declined. We were hardly able, with utmost diligence, to get the bill served on Mrs. Parks before her death.

*D. J. McGillicuddy,* for defendant.

The ordinary rule, as to setting aside the verdict, must prevail in this case. The verdict must be clearly and manifestly against the weight of evidence. "The court will not interfere unless it seems certain that injustice has been done by reason of some bias on the part of the jury, or a total misapprehension of the case upon which they have found. Where the evidence is conflicting upon points vital to the result, the conclusion of the jury will not be reversed, unless the preponderance against the verdict, is such as to amount to a moral certainty, that the jury erred." *Enfield* v. *Buswell,* 62 Maine, 128.

If Mrs. Parks, at the time of her application and insurance, was affected with incipient pulmonary consumption, which we deny, and she did not know it, and her answers were given honestly and in good faith and "to the best of her knowledge and belief," then the defendant is entitled to recover. *Clapp* v. *Mass. Benefit Association,* 146 Mass. 519.

PETERS, C. J. The complainants, by this bill, seek to have cancelled a life insurance policy, issued by them to Alice J. Parks

for the benefit of her husband.    It is claimed that the policy was wrongfully obtained, or improvidently issued.    She has died since this proceeding was instituted.    The policy being for the benefit of the husband, the bill may be continued against him as her survivor.

The ground upon which the bill seeks a cancellation of the policy is, that she falsely stated in her application that she was at that date in good health, and that she had usually had good health.    She declares at the close of her application, which is made a part of the policy, that she warrants all her statements in general and particular to be true to her best knowledge and belief, and that any untrue or fraudulent statement or concealment of facts by her shall forfeit and cancel all rights to any benefit under the policy.

The questions of fact, whether she had good health when insured, and whether she usually had good health, were submitted to a jury which found in her favor.    The motion is, by the complainants, not only to set the verdict aside, but that the court, notwithstanding the verdict, shall declare the policy to be void.    The judge has reported the evidence, on this motion, to the full court for its decision of the questions presented.

Possibly a question exists as to whether her answers in the application are warranties or representations, and nice distinctions may be found in the decided cases between the two kinds of contract.    But that is immaterial here, as in either case the policy should be declared void, if the statements were untrue.    It matters not, whether they were warranted to be true, or merely represented to be true, if in fact untrue.    *Campbell* v. *Life Ins. Co.*, 98 Mass. 381.    2 Pars. Cont. cited *post.*, and cases.

The insured was about twenty-four years old, had three children, one about six months old, when her application was made.    She was confined by the birth of her infant in November, 1887, and was sick of typhoid fever in January, 1888, from which she got up sometime in March afterwards.    Her application is dated March 1, 1888, she was examined by the medical agent of the company on April 18th, and her application was approved by the company on April 22nd.    On May 12, 1888, her physician was

called, who found her weak, with a cough, and sick with consumption, from which disease she died on the 21st of July afterwards.

The complainants contend that she was sick of incipient consumption as early as when her application was tendered to the company, and that she never really recovered from the effects of the fever with which she was afflicted at the beginning of the year. These positions are denied by the other side.

The usual question arises as to what is good health, and, as we find no statement of the law on the question more satisfactory than that of Professor Parsons, summarized from the authorities, we quote from it as expressive of our views on the subject: "The health of the body required to make the policy attach, does not mean perfect and absolute health; for it may be supposed that this is seldom to be found among men. 'We are all born,' said Lord Mansfield, 'with the seeds of mortality in us.' Nor can there be any other definition or rule as to this requirement of good health, than that it should mean that which would ordinarily and reasonably be regarded as good health. Nor should we be helped by saying that this good health must exclude all disorders, or infirmities, which might possibly shorten life; for, as has been well said in an instructive English case, that may be said of every disorder or infirmity. But it must obviously be very difficult to determine questions like these by any general rule. And it is the usual practice of courts to leave these questions to the jury. * * * Courts and juries usually, and we think properly, construe these questions and answers quite liberally in favor of the answerer, and quite strictly against the insurers, unless there be a reasonable suspicion of fraud. The good faith of the answers should be perfect. The presence of it goes very far to protect a policy, while a want of it would be an element of great power in the defense." 2 Pars. Cont. (6th ed.) 465.

There is obviously a close line between incipient disease, disease in its first stages, and merely a bodily condition which is susceptible to the contraction of disease. A weak person may be well, and a strong person sick. And, of course, a person may have a disease upon him without knowing it. The complainants

contend that, whether the insured knew or appreciated the fact or not, there was an unbroken connection between the fever and the consumption, one running into the other, the effect of which caused death, and that it was impossible that she was in good health when insured. We are so strongly impressed, that the jury have committed error in their findings, we think the verdict should be set aside, and the case decided without committing it to a jury again. It would, to our minds, be flagrant injustice to other policy holders, on the facts presented, and evidently no other material facts are attainable, to allow this policy to stand. *Larrabee* v. *Grant*, 70 Maine, 79. We think the bill should be sustained without costs, the policy annulled, and all premiums received be returned.

*Decree accordingly.*

WALTON, DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.