54   663
56   770

## THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY v. MARY M. WOODS.

1. LIFE INSURANCE POLICY — *Statements in Application — Warranties When.* The statements contained in an application for a policy of life insurance will not be construed as warranties, which if untrue in any particular would avoid the policy, unless the provisions of the application and policy, taken together, leave no room for any other construction.

2. ANSWERS, *Construed as Statements — Policy, not Void.* While, in the application for the policy in this case, it is declared that all the statements written on the application are warranted to be true, inasmuch as the policy refers to the answers to the questions contained in the application as statements, and not as warranties, the court will construe them merely as statements, and, therefore, holds that the insured was bound only to the exercise of good faith, and to answer truthfully as to all matters within his knowledge, and an omission to state a fact which he honestly deemed immaterial will not vitiate the policy.

3. PLEADINGS, *Construed.* The answer in this case sets up that the insured, in answer to the questions, "How long since you consulted any physician? For what disease? Give name and residence of such physician," stated: "Three years ago; typhoid fever; good recovery; Doctor Batinff, Ashtabula, Ohio;" that, in fact, the insured was, at the time of making such application, diseased with catarrh and consumption, of which he afterward died, and did not allege that he was or had been afflicted with any other disease. *Held,* That, under the pleadings, it was immaterial whether he had any other disease or not, especially in view of the fact that all the testimony shows that he had fully recovered from such previous complaints, if any.

4. SETTLEMENT, *Obtained by Fraud — Equitable Relief.* Where a widow in whose favor a policy of life insurance was issued by the defendant company, was induced by the agent of the company, shortly after the death of her husband, to accept a return of $71.17 in satisfaction of a policy for $1,000, but promptly, and almost immediately thereafter, disavowed such settlement, and offered to return the sum received, a court of equity ought to relieve her from the consequences of such settlement, if she has been unduly influenced or overreached. Proof of legal duress or actual fraud need not to be required. The jury in this case having found in favor of the plaintiff, their action will not be disturbed.

*Error from Pawnee District Court.*

THIS action was brought by Mary M. Woods on a policy of insurance issued by the defendant on the life of Charles H. Woods, her husband, who died at Hutchinson, on March 15, 1888. The execution of the policy and the fact of the death of the assured were admitted, but the answer of the defendant alleges that the policy was based on an application made by the deceased, in which certain untruthful statements were made by him, as follows:

"Ques. 19. How long since you consulted any physician? For what disease? Give name and residence of such physician. Ans. Three years ago; typhoid fever; good recovery; Doctor Batinff, Ashtabula, Ohio."

"Q. 25. Is there anything, or has there ever been anything, in your physical condition, family, or personal history, or habits, tending to shorten your life, which is not distinctly set forth above? A. No."

The policy contained the following provisions:

"*Third.* If any statement made in the application for this policy shall be found incorrect, this policy shall be void: *Provided,* That if the age has been given correctly, and death shall occur later than three years from the date hereof, and if this policy shall not have been declared void by the company prior to such death, the liability of the company shall not after such death be disputed on account of such statement, except in case of fraud."

The application and policy bear date August 17, 1886. The answer alleges that the said Charles H. Woods had, on January 1, 1886, contracted a severe cold, which settled on his lungs; that he gradually grew worse from said date until his death, March 15, 1888, which resulted from consumption, caused by said cold. It is also alleged that at the time of the execution of said policy said Charles H. Woods was sick with catarrh and consumption, and continued so until his death. As a further defense, the answer states that on the 15th day of May, 1888, the defendant settled said loss with the plaintiff, and paid her the sum of $71.17; that in

consideration thereof she surrendered and canceled the policy. The plaintiff replied, alleging that the policy and the receipt indorsed thereon were obtained from her by the agent of the insurance company through fraud and imposition, and by means of false statements. The plaintiff brought into court and tendered a return of the check which had been given to her at the time of the alleged settlement. The jury rendered a general verdict in favor of the plaintiff for $1,151.47. A new trial was denied, and judgment on the verdict rendered for the plaintiff, and for costs. The defendant company brings the case here.

*J. B. Johnson,* and *Keeler & Welch,* for plaintiff in error:

It seems to us that the material errors of the district court against the company are palpable and beyond dispute. The chief of these errors in the instructions are:

1. Instructing the jury in effect that, even if the said answer to said question 19 was false, its falsity could not constitute a defense for the company unless such answer was also willfully false.

2. Instructing the jury in effect that, even if Woods, in his application for insurance, falsely stated that he had not been recently treated by a physician, when in fact he had been recently under such treatment, yet such false statement could not be used to avoid the policy unless he died from a continuance of the identical disease or diseases for which he had been so treated.

3. Instructing the jury so that it might conclude that it could not find a verdict for the defendant for any reasons unless it found Woods's answer to said question 19 to be willfully false, and that he died from a continuance of the disease or diseases for which Doctor Malcolm had treated him.

4. Instructing the jury in effect that if said question 19 was answered truly, it was immaterial whether said question 25 was answered truly or not.

5. Instructing the jury in effect that the settlement was

not binding upon Mrs. Woods unless when she made it she was "fully apprised of her rights."

6. Refusing to instruct the jury that, if the said answer to said question 19 was false, then Mrs. Woods could not recover.

7. Refusing to instruct the jury that the application was made a part of the contract of insurance, and that the answers in the application were by Mr. and Mrs. Woods warranted to be true.

8. Refusing to instruct the jury that, by the terms of the policy of insurance, it was void if any of the answers in the application were untrue.

"A warranty in the law of insurance is a statement or stipulation inserted or referred to in and made a part of the policy upon the truth or performance of which upon the part of the insured the validity of the contract depends." "The effect of a warranty is to make void the policy, if the statements made are not literally true, . . . without regard to their actual materiality, the willfulness of the falsity or unobservance, or the cause of loss."

These propositions are fully established by numerous authorities cited in 11 Am. & Eng. Encyc. of Law, p. 291 (n. 1, 4), p. 292 (n. 1, 2, 3, 4), and on p. 293 (n. 2). It seems entirely unnecessary to extend this brief by a review of these authorities. Two of them, to wit, *Linz v. Mass. Ins. Co.*, 8 Mo. App. 363, and *Maine Ben. Ass'n v. Park*, 16 Atl. Rep. (Me.) 339, seem to be particularly applicable to the facts of this case.

*Houk & Whitelaw*, for defendant in error:

The court below, in charging the jury, doubtless proceeded upon the theory that the statements of the assured contained in the policy and in the application were not warranties, but representations, and that in making such statements it was sufficient if the assured exercised honesty and good faith. We think the court proceeded on the correct theory, and that there was therefore no error in the charge, and no error in

the refusal of the court to charge the jury as requested by the defendant company. The statement of the agent, in taking the deceased's application, that he did not expect the deceased to tell of any slight cold or little pains, "he did not expect him to recite every slight pain and everything in that line," would clearly indicate that the agent himself only expected and intended that the assured should make his answer honestly and in good faith. The case of *Mouler v. Insurance Co.*, 111 U. S. 335, contains a very able and full discussion of the law of this case. See, also, *Jeffries v. Insurance Co.*, 89 U. S. 833; *Insurance Co. v. France*, 91 id. 510; *National Bank v. Insurance Co.*, 95 id. 678; *Grace v. Insurance Co.*, 109 id. 934; *Insurance Co. v. Rundell*, 34 N. E. Rep. 588; *Insurance Co. v. Pearce*, 39 Kas. 405; *Protective Union v. Gardner*, 41 id. 397.

Under the circumstances, it may be well said that the mind of Mrs. Woods, unless "she was fully apprised of all her rights of recovery," was not able to act, nor left free to decide upon the considerations addressed to it, these considerations including persuasions and false promises of the payment of money to her, and what was, no doubt, of greater importance, covert threats of family disgrace and aspersions upon the memory of the dead.

These things, to say the very least, imply a moral coercion exerted upon Mrs. Woods which made the act of assent not hers, but that of another. In Pomeroy's Equity Jurisprudence, §§ 950 and 951, it is said: "Courts of equity undoubtedly grant relief in many classes of instances where there is no legal duress, and where the wronged party would, perhaps, be remediless at the common law; but these cases properly belong to the head of undue influence." See, also, to the same effect, Story's Equity Jurisprudence, § 250, and *McDonald v. Wilson*, 2 Cow. 139.

The opinion of the court was delivered by

ALLEN, J.: It is urged on behalf of the insurance company that the statements contained in the application are

warranties, and that, in case such statements were not strictly and literally true, the policy may be avoided. In support of this contention, the cases of *Linz v. Insurance Co.*, 8 Mo. App. 363, and *Benefit Association v. Park*, 16 Atl. Rep. 339, are cited. The first case named cites no authorities on this question, and gave it apparently but slight consideration, as the decision turned on a question of evidence. The other case, decided by the supreme court of Maine, was an action brought to annul a policy before the death of the assured. This case can hardly be said to support the contention of the plaintiff in error. On the other hand, we have the decision of the supreme court of the United States in the case of *Mouler v. Insurance Co.*, 111 U. S. 335, which was an action on a policy of insurance which contained the following provision:

"It is hereby declared and warranted, that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned that this application shall form part of the contract of insurance, and that if there be in any of the answers herein made any untrue or evasive statements, or any misrepresentation or concealment of facts, then any policy granted upon this application shall be null and void."

In the application on which the policy was issued, the seventh question asked was, whether the assured had ever been afflicted with any of the diseases therein named, among which were included scrofula, asthma, and consumption. There was evidence tending to show that, at or prior to the date of the application, the insured was afflicted with said diseases, or some of them. The court held that the statements in the application were not warranties, and that

" It was an erroneous construction of the contract to hold, as the court below did, that the company was relieved from liability if it appeared that the insured was in fact afflicted with the diseases, or any of them, mentioned in the charge of the court. The jury should have been instructed, so far as the matters here under examination are concerned, that the

plaintiff was not precluded from recovery on the

**1. Life insurance policy—statements in application—warranties, when.** policy unless it appeared from all the circumstances, including the nature of the diseases with which the insured was alleged to have been afflicted, that he knew, or had reason to believe at the time of his application, that he was or had been so afflicted."

It will be observed in this case that, in the third condition of the policy, copied in the statement of the case, the answers of the deceased in the application are referred to as statements, and we think the policy under consideration in this case no stronger in its provisions than that under consideration in the case last above cited. See, also, *National Bank v. Insurance Co.*, 95 U. S. 673; *Insurance Co. v. Rundell*, 34 N. E. Rep. 538.

Mamie Woods, a daughter of the deceased, testified that she was present when her father made the application on which the policy was based; that "the agent told papa any slight cold or little pain he did not expect him to tell of. He did not expect him to recite every slight pain, and everything in that line."

Complaint is made of the instructions of the court, because, in their general scope, they do not treat the statements in the application as warranties, but directed the jury, in substance, that the applicant was only held to good faith in his answers, and that the policy could only be avoided if he died from a continuance of the identical disease or diseases for which he had been treated before his death. We need not trouble ourselves with the question which was before the supreme court of Maine in the case of *Benefit Association v. Park*, supra, whether a misrepresentation as to whether the assured was afflicted with a disease named, when death resulted from another and different disease, is a material misrepresentation

**3. Pleadings, construed.** which will avoid the policy, because the pleadings in this case charge only that he had the disease of which he afterwards died, and no mention is made of any other or different disease. It is alleged in the answer that he was afflicted with catarrh and consumption, and it is

claimed by counsel that the consumption of which he died was superinduced by the cold and catarrh contracted prior to the issuance of the policy.

The proofs of death furnished in this case state that the remote cause of death was contracting a severe cold at a revival meeting, about January 1, 1886, with gradual loss of flesh and strength until he died. The proof signed by the plaintiff gives the duration of his last illness about two months, and that he gradually grew worse every day until he died. If the statements contained in the proofs had been correct, of course, the insurance company would have had a good defense; but it was very clearly shown at the trial that the date given was a mistake, and that January 1, 1887, was intended instead of January 1, 1886. There was abundant evidence to show that Mr. Woods was in usual health and was very actively employed as a Baptist preacher up till January, 1887, when he contracted a severe cold at a revival held at Burrton. The only testimony in the case tending to show that he had any ailment between the 1st of January and the 17th of August, 1886, is that of Dr. J. G. Malcolm. He testified that he had called on the deceased professionally several times during that period; that on July 17 the deceased called on him for treatment for a catarrhal affection of the throat and nasal passages, and that he treated him for the same on July 20, 22, 26, August 12 and 21; that he made an examination of his lungs sometime in July, 1886; that he found no evidence of any physical change of the lungs, but could not say there was no such change; that he did not think there was any relation between catarrh and consumption, nor that catarrh of the throat would produce consumption, unless a person has tubercles of the throat or larynx. On cross-examination, the witness stated that his first treatment of Mr. Woods for catarrh was on July 17, 1886, and that he recovered from the disease with which he was afflicted, calling for visits from January 25, 1886, to July 17, 1886. As the jury were told that, if the deceased was being treated for a disease of which he afterwards died, and knowingly gave false answers in his application

concerning the same, they should find for the defendant, we
think the defendant was given at the trial the full benefit of
the testimony of the doctor.

It appears from all the evidence that Mr. Woods was never
a robust man.   Conceding that he was afflicted with catarrh
at the time of his application, it does not necessarily follow,
nor indeed would it generally be regarded as probable, that
an ordinary case of catarrh would develop into consumption.
We think most people are inclined to regard ordinary colds
and ordinary cases of catarrh as ailments furnishing no seri-
ous cause for alarm, and that, under the testimony
2. Answers, contrued as in this case, the jury was abundantly warranted
statements— policy, not in finding that the statements of the deceased were
void.
made in good faith, and especially so, when he
was told by the agent of the company that he need not tell of
any slight cold or pain. (*Continental Ins. Co. v. Pearce*, 39
Kas. 396; *Insurance Co. v. Barnes*, 41 id. 161; *Protective
Union v. Gardner*, 41 id. 397.)

Complaint is made of certain rulings of the court concern-
ing the admission of testimony.   We have examined all of
the matters referred to in the brief, and find no error in the
rulings of the court, nor anything worthy of particular men-
tion here.

With reference to the third defense, it appears that on the
15th of May, 1888, E. W. Poindexter, the company's agent
for the state of Kansas, called on the plaintiff with a letter
from the president of the insurance company to him, which
he read to the plaintiff.   In this letter, question 19 and the
answer thereto were quoted, and attention was called to
the statements in the proof of death that the disease was
caused by consumption, caused by taking a cold at a revival
meeting January 1, 1886.   The letter further stated that the
case had been fully considered by the committee on insurance,
which had decided against the claim, and directed that the
premiums paid on the policy, with interest, be refunded, and
directing the agent to make a tender of this sum.   The plain-
tiff testified that she then told him that there must be a mis-

take with reference to the dates, and she asked him to see
Doctor Malcolm; that in the afternoon he returned, said he
had seen Doctor Malcolm, and that Doctor Malcolm thought
there was no other way; that she had better accept the propo-
sition; that Poindexter also offered to make a liberal dona-
tion out of his own pocket; that he seemed to want to help
her, and gave her $73 only, in a check, which was the amount
of the premium and interest. The plaintiff further testified,
that she signed the receipt on the policy relying on Poindex-
ter's statement that she could not recover, and that Doctor
Malcolm had advised her to take it. Very soon after this
transaction Poindexter was arrested, and the policy was left
at the Bank of Hutchinson under an agreement, so that the
plaintiff might have access to it to make copies if she desired
to sue on it. Poindexter was then discharged, and the check
was tendered back to him.

The jury were instructed that, if they found that the plain-
tiff accepted $71.17 in full satisfaction of her claim against
the insurance company, and that her acceptance was upon a
full and complete and fair knowledge of her rights of recov-
ery, then the jury should find for the defendant; but unless
they should find that the plaintiff was fully apprised of all
her rights with reference to recovery, and that the plaintiff
was in no manner overreached or deceived by the defendant,
or induced to engage in any settlement that she would not
have engaged in had she been fully apprised of her rights,
then the jury should find that there was no settlement made.
This instruction is subject to criticism for using the word
"rights" rather than the words "facts affecting her rights."
It is argued that the plaintiff had as good an opportunity to
be, and was in fact, as fully informed with reference to all the
facts as the defendant, and that she is presumed to know her .
legal rights as well as the defendant knew them. The facts
in this case do not show anything like duress, but legal duress
is not always necessary to entitle a party to relief in equity.
In Pomeroy's Equity Jurisprudence (§ 950), it is said:

" Courts of equity undoubtedly grant relief in many classes

of instances where there is no legal duress, and where the wronged party would perhaps be remediless at the common law, but these cases properly belong to the head of 'undue influence.' "

In Story's Equity Jurisprudence (§ 239), the author says:

" Cases of an analogous nature may easily be put, where the party is subjected to undue influence, although in other respects of competent understanding. . . . Circumstances also of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, may in like manner so entirely overcome his free agency as to justify the court in setting aside a contract made by him on account of some oppression or fraudulent advantage or imposition attendant upon it."

We do not think that in this case it was necesssary for the plaintiff, in order to avoid this settlement, to prove either strict legal duress or actual fraud. The facts of the case were, that she had a claim against the insurance company for $1,000. A mistake of a year had been made in stating in the proof of death the date when her husband contracted the disease which resulted in his death. The letter of the president of the defendant company charged her deceased husband with falsehood and misrepresentation in the application for insurance. This charge, coming so recently after his death, when backed up by Poindexter's statement that he had learned from Doctor Malcolm that the statements in the proofs of death were correct, were well calculated to influence the plaintiff's action. Expressions of friendly interest by the company's agent, and the promise of a donation from his own pocket, may have had some influence on her, and she was induced to accept the small sum of about $70 in discharge of $1,000. In such a case this court would be very loth to set aside the findings of a jury, where there were any circumstances at all fairly tending to show that she was overreached by artifice, or subjected to any undue influence in obtaining the settlement. We find no error in the record warranting a reversal of the judgment, and it is therefore affirmed.

All the Justices concurring.

*Margin note:* 4. Settlement, obtained by fraud—equitable relief.