EQUITABLE LIFE ASSUR. SOC. *v.* SERIO.

(Division B. Nov. 25, 1929.)

[124 So. 485. No. 28077.]

Brandon & Brandon, of Natchez, and **Watkins, Watkins & Eager**, of Jackson, for appellant.

**Kennedy & Geisenberger**, of Natchez, for appellee.

**Griffith, J.**, delivered the opinion of the court.

For several years appellee has carried a policy of life insurance with appellant insurance company. As an additional feature of this policy, and for an additional premium therein required, there is the following provision:

"If the insured, while less than sixty years of age and while this policy is in full force and effect, shall become totally and permanently disabled, and shall furnish due proof that he is physically or mentally incapacitated to such an extent that he is rendered wholly or permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value, and that such disability has then existed for not less than sixty days, the society will, upon receipt of said proof, waive the payment of any premium or premiums that may become payable thereafter under this policy during

such disability. And six months after receipt of said proof of disability, the insured may draw a sum not to exceed one-tenth the face amount of this policy and a like sum annually thereafter during the continuance of such disability.

"If the Society accepts proof of disability under this policy, it shall have the right at any time thereafter, but not more frequently than once a year, to demand of the insured proof of the continuance of such disability, and if the insured shall fail to furnish such proof, or if it at any time appears that the insured has become able to engage in any occupation whatsoever for remuneration or profit, no further premiums shall be waived and no further installment payments will be made hereunder."

Appellee successively made proper claims for two annual installments under the provision aforesaid, but payment was refused; and, having sued therefor, he recovered judgment. The facts are, in brief, that the insured became afflicted with tuberculosis, and under the advice of his physician he was constrained to cease from the performance of any regular manual labor, but was able nevertheless during a part of nearly every day to be up and around a small country store which he and his wife, with the aid of the children, were operating, and in the back part of which the family lived. In this operation he could still "do small jobs;" could occasionally wait on customers when no considerable effort or exertion was required, and at those times of the day, when not required to actually rest in bed, he could and would assist in the store in an irregular and more or less casual way; but always in so doing was subject to the risk and immediate contingency of becoming weak and having to go back to bed. In short, the entire testimony justified the conclusion that while the insured was able on occasions from time to time to perform irregularly some

small part of the requirements of the particular business in which he was, with his family, engaged, and this under the circumstances that one or more members of the family would be there for his aid or protection, there was and is no substantial basis for any such conclusion, taking all the testimony together, that separate from these members of the family and from the surrounding security which they on their part placed around him, owing to the peculiar and particular situation there present, he could have independently earned an amount of any consequence in any kind of employment for financial value.

The construction which is placed by nearly all courts on the insurance contract above quoted is an equitable and reasonable interpretation; and is not that literal interpretation which would require a condition of complete helplessness, nor such an entire physical or mental inability in respect to the pursuit of an occupation or employment that the insured can do absolutely nothing. And particularly is the construction the more liberal in its application to a case where the disability arises out of a disease the nature of which is such that common care and prudence require the insured to rest to the extent that he shall refrain from the ordinary exactions of any fixed employment, else the disease will progress and cause death. Tuberculosis is such a disease, as is well enough known to common observation—well enough generally known that it requires no proof before the average jury in this state.

Although the language of this disability provision is not precisely the same as that dealt with in Metropolitan Cas. Ins. Co. v. Cato, 113 Miss. 283, 74 So. 114, the principle to be applied is the same; and the jury under all the evidence was well justified in finding the facts as we have above stated them, and which so found bring this case within the facts and principles of the Cato Case.

See, also, Provident Life & Accident Ins. Co. v. Anding, 144 Miss. 277, 109 So. 670.

It is the further main argument that the proof does not show that the disability was and is a permanent one. In other words, as we understand the import of the argument, the contention is that it is not shown that the insured may not get well. If, as applied to a case of disability arising out of tuberculosis or any similar disease, it be the purpose of the insurer to argue and maintain that the insured must not quit work but must go on at work and thereby to his death, else he is not totally disabled and cannot recover, and on the other hand when he quits work and thus endeavours to arrest the disease and thereby improves in condition so that eventually he may get well, he cannot recover because the disability is not permanent, then we must return the obvious answer that to sustain such a contention would be to permit the courts of this state to be worked in this matter into an inadmissible dilemma. It would be to hold that an insured in such a case who has paid his premiums would be deprived of his recovery regardless of what course he may take when a disability under a disease such as above mentioned has overtaken him.

It is true that under Shipp v. Metropolitan Life Ins. Co., 146 Miss. 18, 111 So. 453, the disability must be both total and permanent at the same time, but exactly in the same manner that this court and practically all the other courts of this country have refused to interpret the term "total disability" as meaning entire or absolute helplessness, so we refuse to interpret the term "permanent disability" as one which must at all events be a lasting one without any hope or possibility of a recovery or change for the better. As already said, courts must give these contracts a reasonable interpretation, an interpretation which will stand the test of honesty of purpose in their meaning, and which will square the transaction be-

tween the parties in making the contract with some valuable object in contemplation at the time. If the term "total disability" should be held to mean utter helplessness, and "permanent disability" be held to mean utter hopelessness, then about the only case covered would be where the insured has lost both arms and both legs or some other such a case so rare as not to be for a moment reasonably considered as ever having been within the contemplation of the insured at the time of the taking of the policy. It would come to this: To give said terms the strict or literal interpretation stated would be to convict a reputable insurance company of having put out among our people, and having collected from them premiums on, a policy provision which in effect would be scarcely more than a cheat, a pretense, and a fraud. Certainly no such could have been intended.

We construe the term *permanent,* when used in a policy provision such as this, as one used for the proper purpose, and for the purpose only, of excluding disabilities which are merely *temporary.* Although the disability be one which may or will pass away in a fair period of time, yet if the required period is longer than that which, reasonably considered, is only temporary, then it must of necessity fall within the opposite general term permanent, because it is not temporary. There are many cases and situations in the law, and these outside of insurance problems, where the word *permanent* is used and interpreted in a time sense far shorter than perpetual or lasting always. The connection in which the word is used, rather than its most restricted literal definition, is required to control.

We refer to the provision of the policy in respect to these time periods. It provides that the insured shall furnish proof that he has become totally or wholly and permanently disabled or unable, and that this disability has existed for not less than sixty days, and that six

months after receipt of said proof the insured may draw a sum therein specified and a like sum annually during the continuance of such disability; and to the further provision that the insurer may thereafter, but not more frequently than once a year, require proof of continued disability. Policy provisions requiring proof must be so construed that it shall be easily possible for the insured in making his proof to do so conscientiously and with perfect truth. So, when an insured is stricken with tuberculosis or any other lingering disease, how can he swear at the end of sixty days, or even in six months, whether or not he will eventually recover; that is to say, if the contention of appellant be accepted, whether or not his disability is permanent? To admit the contention would be to write out of the policy all such diseases and would be to affix an exception to the contract, not therein written, that the same does not cover tuberculosis and similar diseases and disabilities. We reject the contention and adopt the holding of the court in Penn Mutual Ins. Co. v. Milton, 160 Ga. 168, 127 S. E. 140, 40 A. L. R. at page 1385, and we refer also to the language of our court in Heralds of Liberty v. Jones, 142 Miss. at page 743, 107 So. 519, and particularly the concluding paragraph of that opinion. See, also, Eastep v. Northwestern Nat. Life Ins. Co., 114 Neb. 505, 208 N. W. 632.

We find no reversible error in any of the assignments. Affirmed.