Bertha O. Kroon, Appellee, v. The Travelers Insurance Company, Appellant.

Gen. No. 9,148.

Opinion filed April 14, 1937.   Rehearing denied May 7, 1937.

BARR & BARR, of Joliet, for appellant.

SNAPP, HEISE & SNAPP, of Joliet, for appellee.

MR. PRESIDING JUSTICE HUFFMAN delivered the opinion of the court.

On September 25, 1934, Emanuel C. Kroon, of Chicago, made application to appellant company for a policy of life insurance, commonly called term insurance, which was to run for a term of five years, being then convertible into other forms of regular life insurance. The amount of insurance applied for was $10,000. Richard J. Joice, who was working for Joice & Company, insurance brokers of Chicago, secured the application for said policy. He thereupon submitted the same to the agents of appellant company, in Chicago. The applicant was examined and his policy premium was rated up double to that charged for an ordinary risk. The applicant was 39 years of age, five feet ten inches in height, and weighed 227 pounds. The policy issued under date of October 1, 1934. Joice made a number of attempts to deliver the policy to the applicant but was unable to do so, due to his refusal to accept the policy at the increased premium. Joice did make delivery of the policy on November 18th, 19th, or 20th. The actual date when the policy was delivered to the applicant is in dispute. Joice states that it was on November 18th. He signed a written statement to the effect that it was on either November 19th or 20th. A check in the sum of $201.20, in payment of the premium thereon, issued under date of November 20th, and was signed by the applicant's sister, Isabel G. Kroon. Receipt for payment of the premium issued under date of November 22nd. The check was cleared on November 23rd.

On November 18th, the family physician of the applicant's family, called at the home of Mr. Kroon to

treat one of his children, who was then ill. Mr. Kroon at that time stated to the doctor, he was not feeling well, whereupon the doctor gave him a cursory examination, finding that he was suffering from tonsillitis, a sore throat, a cold in the head, sinusitis, and exhibiting the symptoms of an ordinary cold. This was about nine or ten o'clock on the night of November 18th. The doctor states that Mr. Kroon was lying on the bed and that the only examination he made of him at that time was to look at his throat and note that he had the cold in his head, together with a nasal discharge. The doctor was again called to see Mr. Kroon on the second evening following. At this time he gave him a more pronounced examination. He states that he found nothing definite as to the condition of his lungs. This was on Tuesday. On the next day the doctor received a call at about 5:30 o'clock in the morning. Upon answering this call he found evidence of pneumonia. He had Mr. Kroon removed to the hospital. This was on November 21st, and on November 23rd, he died from pneumonia.

The policy in question contains the following provision, "and that the contract issued hereupon shall not take effect unless the first premium shall be actually paid while I am in good health in so far as I have knowledge or information." Appellant denied liability and among other things set up that at the time the first premium was paid, the applicant was not in good health and that he knew he was not in good health. The jury returned a verdict in favor of the beneficiary, appellee herein, for the full amount due under the policy. The trial court denied the motions of appellant and entered judgment on the verdict. Appellant has prosecuted this appeal therefrom.

The record in this case consists of almost six hundred pages and contains much controverted testimony. It is impossible within the limits of this opinion to

undertake any extended review thereof. The testimony of the family doctor, who treated the deceased and who signed the physician's statement attached to the proof of death submitted to appellant company, is that on the 18th, when he examined Mr. Kroon, his tonsils were enlarged and inflamed; that he did not examine his heart action or his chest that night; that he was lying on the bed; that he had fever, and he gave him a prescription to be taken for the reduction of temperature. He saw him the next day; and on the following day, in answer to the call made early in the morning, he discovered that the deceased had developed pneumonia. In the doctor's statement in connection with the proof of death made on January 14, 1935, he states the immediate cause of death to have been acute pleuritis and pneumonia, and that the contributing causes of death were tonsillitis and sinusitis. He further states, ''I first saw him with the above on November 18, 1934.'' The doctor was a witness for the plaintiff. An interne at the Michael Reese Hospital, in Chicago, where Mr. Kroon was taken, testified that he took the history regarding his illness, from appellee, his wife, and wrote down the statements and answers given by her to him in the manner in which they were then given; that he did not undertake to secure any information with reference to such history from Mr. Kroon, as he was considered too ill to be disturbed. This witness testifies that Mrs. Kroon said her husband had a chill about 12 days previous and since that time had experienced aching pains through his chest and back, and since said time had had fever; that he developed tonsillitis four or five days before coming to the hospital; that he had had a pain in his chest and fever since his chill; that since that time he had remained in bed, but not continuously; that he was a difficult patient to handle and would not stay in bed; that four or five days after he developed the tonsillitis,

the pain in his chest became worse and that the doctor had caused him to be brought to the hospital. The hospital record, which was introduced in evidence without objection, discloses that the deceased died from bronchial pneumonia; that he suffered a chill 12 days before, and that since said time had experienced pain through chest and back, with fever; that he developed tonsillitis four or five days previous.

When the vesting of the policy is contingent upon the payment of the first premium, it cannot ordinarily be said there is a consummation of the contract prior to such payment. And if there be a provision that the policy shall not become effective unless the first premium be paid while the insured is in good health, ordinarily, the contract is not consummated unless such premium is paid while the applicant is in good health. When a policy of life insurance is delivered, of necessity it is based on the status of the insured at the time of application, and the premium is determined according to the risks then involved. If, therefore, a material change should occur in the applicant's health between the date of the application and the delivery or consummation of the contract, the insurer should be informed thereof. *Western & Southern Life Ins. Co. v. Tomasun,* 358 Ill. 496, 503. Provisions regarding the good health of the applicant, similar to the one contained in this policy, have been held to preclude a recovery where the physical condition of the applicant has become impaired in a manner material to the risk, between the date of the application and the delivery of the policy, and which did not exist at the time of the application. *Daniels Motor Sales Co. v. New York Life Ins. Co.,* 220 Ill. App. 83; *Nyman v. Manufacturers' & Merchants' Life Ass'n,* 262 Ill. 300. Where the affliction is one from which the applicant was not suffering at the time of his application and examination for the policy, the insurer cannot be said to have assumed

the risk involved, and if the subsequent ill health or disease materially affects the risk, it would appear that such would be a proper defense. *Johnson v. Royal Neighbors,* 253 Ill. 570, 576; *James v. National Life & Accident Ins. Co.,* 265 Ill. App. 436, 439.

The expression, good health, as employed in insurance contracts, is ordinarily construed to mean a reasonably good state of health. *Clover v. Modern Woodmen,* 142 Ill. App. 276. It is impossible to set out or define every situation or condition which might exist, and therefore it becomes the duty of the courts to endeavor to arrive at the real intention of the parties as manifested by the terms and conditions of the contract and the subject matter thereof. Where a considerable time elapses between the application and the consummation of the contract, although the company may assume thereby the risk incident to any of the ailments from which the applicant is suffering at the time of his examination, yet contracts of insurance are essentially of good faith, and under such circumstances if the applicant in the interim contracts sickness or disease from which he was not suffering at the time of his application, and which is material to the risk involved, it cannot be said that the parties contemplated such additional risk by virtue of the contract, and if the same is delivered without knowledge of the applicant's changed condition in health, the contract does not become effective, unless the insurer sees fit to waive the condition of the policy.

If the subsequent changed condition in health of the applicant did not cause his death or directly contribute thereto, then the same would not become material to the risk involved. *Court of Honor v. Dinger,* 221 Ill. 176. The death of the deceased does not appear to have resulted from any disease from which he was suffering at the time of the application for the policy. The evidence shows that he died from bronchial pneu-

monia; that he had a chill 12 days previous, followed by pain in chest, and fever; that he had tonsillitis and sinusitis; and that these continued until he was taken to the hospital with pneumonia. It appears that tonsillitis and sinusitis are predisposing causes to pneumonia. The attending physician's statement in the proof of death, identifies these two infections, and names them as the contributory causes of death. Pneumonia is an infectious disease.

Courts are inclined to a liberal construction of insurance policies. Yet in this case it appears that the applicant was aware he was suffering with an illness which arose long subsequent to his application and prior to the consummation of the contract; it appears that his illness was of a nature that was predisposing to pneumonia; and that he proceeded to develop pneumonia within a day or two after the family doctor first examined him.

Courts of review are reluctant to set aside the verdict of a jury. Yet, if it appears that the same is manifestly against the weight of the evidence, the judgment thereon will be set aside and the cause remanded for another trial. *Baumeister v. Bowers,* 271 Ill. App. 332. We are of the opinion that the verdict of the jury was against the weight of the evidence, and that the trial court erred in not granting appellant's motion for a new trial.

The judgment herein is reversed and the cause remanded.

*Reversed and remanded.*