**TEXAS INDEPENDENCE LIFE INS. CO.**
***et al. v.* PICKENS.**

No. 5321.

Court of Civil Appeals of Texas. Amarillo.

June 23, 1941.

Rehearing Denied Sept. 8, 1941.

Hornsby & Hornsby, of Austin, for appellants.

Garriott T. Baldwin, of Slaton, for appellee.

JACKSON, Chief Justice.

The record discloses that on March 21, 1939, E. N. Pickens executed for himself and for his wife, Lorinda Pickens, an application to the Mercury Life Insurance Company, a corporation, for a joint life in-

surance policy in the sum of $2,500 payable to the survivor on the death of the other.

On April 1st thereafter the company issued its certain accumulating level premium joint life policy of insurance whereby the insurer agreed to pay to the surviving spouse in accordance with the provisions of the insurance contract on the death of the other the sum of $2,500. The application was attached to and made a part of the contract and among other things stipulated that there was no liability upon the company until and unless the application was accepted and the policy issued and delivered to the applicants while living and in good health; that the applicants assumed the entire responsibility for making a full and complete statement as to health and physical condition and of fully informing themselves with reference thereto before the execution and delivery of the application and "agree that no lack of knowledge shall excuse said applicants for any error or misrepresentation herein contained. * * * If said applicants sign this application and knowingly or unknowingly misrepresent any facts or fail to make disclosure of any facts then and in that event the company's liability under this policy shall be the return of the premium received." It was also provided that if death was caused directly or indirectly from any form of "kidney disease * * * cancer or tumors or chronic diseases within two years after the date of the policy or reinstatement thereof then and in that event the amount payable shall be one-fifth of the amount otherwise payable hereunder at the time of the insured's death."

Other provisions of the contract material to a disposition of this controversy are:

"* * * This policy and the written application therefor, a copy of which is attached hereto and made a part hereof, shall together constitute the entire contract. * * *

"No obligation is assumed by the Company prior to the date of this policy, nor unless on said date the persons named herein are alive and in sound health. * * *

"In case of default in the payment of any premium hereunder, the Company will reinstate the Policy on condition that each of said insured be yet in good health, and free from any acute or chronic ailment, mental or physical defect, upon written request by the Insured to the Company at its Home Office accompanied by the evidence of insurability satisfactory to the Company and the payment of all premium arrears, provided the premiums are not in arrears in excess of twelve months. * * *."

On October 2, 1939, after default in premium payments on the policy an application for reinstatement was made in the following language: "We, the undersigned, hereby apply for reinstatement of Policy issued on our lives and enclose herewith our remittance for $6.00 and warrant that we are now in good health and free from any bodily ailments or disease, except: None. It is understood and agreed that this reinstatement, if accepted, is based on our application filed in the offices of the Company, the terms and conditions of our Policy, and statements herein, both the statements made in our original application as well as herein, we warrant are true. This reinstatement to be effective only after notice of acceptance has been received by us while alive and in good health."

It is undisputed that the policy lapsed for failure to pay premiums on September 1, 1939, and that the application for reinstatement was executed on October 2, 1939, and signed by E. N. Pickens in his own name and in the name of his wife, Mrs. Lorinda Pickens, who died December 19, 1939, of cancer of the cervix.

On May 4, 1940, E. N. Pickens, the appellee, instituted this suit on the policy of insurance; alleged the performance of the contract by himself and wife, her death, the date thereof; that satisfactory proof of death was furnished, and pleaded the liability of the Mercury Life Insurance Company.

By permission of the court the Texas Life Insurance Company was permitted to intervene for the reason that it had acquired the assets and assumed the liabilities of the Mercury Life Insurance Company.

The two companies, each of which was a state-wide mutual assessment company, pleaded the provisions of the application and the policy and also the provisions of the application for a reinstatement thereof to the effect that Mrs. Lorinda Pickens was not in good health at the time the policy was issued nor at the time of its reinstatement and therefore the appellee was not entitled to recover on the policy.

In a supplemental petition the appellee pleaded that if Mrs. Pickens was suffering from any serious ailment or affliction that neither of them had any knowledge thereof when the policy was delivered or when reinstated.

The case was tried before the court without the intervention of a jury and judgment rendered that the appellee have and recover of and from the Mercury Life Insurance Company, a corporation, and the intervener, jointly and· severally, the sum of $2,570.83, from which judgment this appeal is prosecuted.

The appellants by proper assignments assail as error the action of the court in rendering judgment for $2,570.83 against them or either of them upon the policy for the reason that no contract of insurance ever became effective upon the life of Lorinda Pickens inasmuch as under the terms of the policy it was a condition precedent to liability that both the original policy and the reinstatement thereof should be received by the assured while she' was in good health and the uncontroverted evidence they assert shows that the deceased was not in good health at either of such times.

The testimony shows without dispute that Mrs. Pickens, the deceased, went to the Scott and White Clinic at Temple, Texas on May 19, 1936, where her trouble was diagnosed to be cancer of the cervix. Radium was administered on May 21, 1936. X-ray treatments were given August 10, 1936, on which date radium again was administered. She received additional X-ray treatments on November 30, 1936, and soon thereafter returned home but was again carried to the Scott and White Clinic, time uncertain, but radium was again administered November 29, 1938, and X-ray treatments given December 5, 1938. She then returned home but was carried to the Scott and White hospital (how long she remained not shown) but she left on August 17, 1939. The policy lapsed September 1, 1939. Application for reinstatement was made on October 2, 1939, and accepted promptly. She was readmitted to the Scott and White hospital on October 16, 1939, when the physicians again diagnosed her trouble as cancer. She came home where after being confined to her bed most of the time for two months she died December 19, 1939, of cancer of the cervix.

The record indicates that her husband accompanied her to the Scott and White Clinic at Temple on each of the occasions when she was treated at such institution and he talked on various occasions with the physicians who treated her. The husband testified that his wife knew there was something wrong with her in 1936 and· went to Scott and White's Clinic at Temple to see about herself; that she still thought that when she returned there in 1938; that he himself knew of her condition and knew there was something wrong with her but that he didn't know what it was and that when they left the hospital in 1936 they were advised to return for a check-up in about six months.

Dr. Payne testified that he attended Mrs. Pickens at her home in the country near Slaton at the time of her death on December 19, 1939; that the principal cause of her death was carcinoma or cancer of the cervix; that she first consulted him for treatment about May 14, 1936; that in his judgment the health of deceased had been impaired since that date; that she had been confined to her bed about two months before her death.

Dr. T. V. Brinkley of the Scott and White hospital testified that upon the first examination in 1936 of Mrs. Pickens he concurred in the diagnosis that she had cancer of the cervix; that she was treated by X-ray and radium on the dates above set out and that Mrs. Pickens knew all the time while in the hospital she was being treated for cancer; that she was not discharged in 1938 as probably cured and that when readmitted to the hospital on October 16, 1939, a re-examination was made in which her trouble was again diagnosed as carcinoma of the cervix.

■ If the opinions of the physicians who testified as experts be given credence it shows that Mrs. Pickens was not in good health when the policy was issued nor when it was reinstated. The courts hold that good health in a life insurance policy does not mean perfect health but that it " 'Is a state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously, that is, that the insured be not afflicted with a disease or bodily infirmity of a substantial nature, which affects the insured's general health, or which materially increases the risk to be assumed by the insurer.' " Sovereign Camp, W.O. W. v. Derrick, Tex.Civ.App., 64 S.W.2d 982, 983, and authorities cited.

Under this definition Mrs. Pickens was at the time the policy was reinstated, if not when originally issued, afflicted with a disease or bodily infirmity which affected her general health and increased the risk assumed by the insurer.

■ The appellee contends however that the opinion testimony of the doctors is not conclusive upon the court and as a trier of fact he could disregard their opinions. It is true that the opinion testimony that the deceased was affected by cancer was not conclusive and could have been disregarded by the court, Texas Employers' Ins. Ass'n v. Humphrey, Tex.Civ.App., 140 S.W.2d 313, but such testimony should be given due consideration and the probative force thereof was to be determined by the court. The testimony that she was suffering from cancer was opinion testimony but the evidence that her trouble was diagnosed as cancer in 1936 and in 1939 and that between those periods she was treated for the disease of cancer is not opinion testimony. That the court did not discard the opinion of the doctors who stated that Mrs. Pickens was afflicted with cancer is obvious from findings which were at the request of appellants filed by the court and are as follows:

"9. That on or about December 19, 1939, Lorinda Pickens, the legal beneficiary named in said policy, died of cancer (carcinoma of the cervix) and complications resulting therefrom.

"10. That from about the year 1936 down to the time of the death of the said Lorinda Pickens she had been receiving treatments at the Scott & White Clinic, Temple, Texas, for female trouble that sometime during this period developed into cancer.

"11. That during the interval from 1936 down to the time of her death the said Lorinda Pickens had been discharged from said Clinic for long periods of time and was apparently in good health and she and her said husband, E. N. Pickens, did not know that she in fact was suffering from a cancerous condition until after October 2, 1939."

■ The finding that Mrs. Pickens from 1936 until her death was treated for female trouble at Scott and White's Clinic that developed into cancer from which she died on December 19, 1939, could have been based on no testimony in this record other than the expert opinion of the physicians.

The finding that the appellant and his wife did not know of the cancerous condition until after October 2, 1939, the date the policy was reinstated, and that she was for long periods apparently in good health would affect only the good faith of the appellee who made out the application for the policy and also for the reinstatement after it had lapsed but would not make effective and enforceable this policy if the deceased was not in good health when the insurance was issued or when the policy was reinstated. The insured agreed in the contract that no lack of knowledge on their part would be any excuse for any error made relative to their health or physical condition and that if they signed the application and knowingly or unknowingly failed to disclose any fact pertaining to their health the liability of the insurance would be limited to the return of the premiums they had paid. This amount the appellants on the trial of the case tendered into court. The court, as we interpret his findings, determined that the deceased was suffering with cancer, if not before, on October 2, 1939, when the policy was reinstated. Neither the failure of appellant or his wife to know the seriousness of her affliction nor their good faith would authorize him to recover on this insurance contract if, as we believe, the testimony shows she was not in good health at the time the policy was issued or at the time it was reinstated after it had lapsed.

In American Nat. Ins. Co. v. Lawson, 133 Tex. 146, 127 S.W.2d 294, 295, in answer to a certified question, the Supreme Court says: "It is now well settled in this state that a stipulation in a life insurance policy that such policy shall not take effect unless the insured is in sound health at the date the policy is delivered is, unless restrained by some statute, valid and enforceable, and it is immaterial whether the insured knew of his condition in that respect or not. His good faith in believing that he was in sound health at the time the policy was delivered will not authorize a recovery if in fact at the time of the delivery of the policy he was suffering from an ailment of a substantial nature which continued and ultimately caused his death."

In Great Nat. Life Ins. Co. v. Hulme, 134 Tex. 539, 136 S.W.2d 602, 604, Commissioner Harvey says:

"It is to be observed that the application for insurance, which has become a part of the policy sued on, contains a stipulation

to the effect that the policy was not to take effect as an insurance contract unless the insured was in good health at the time the policy was delivered.

"It is well settled that such a stipulation is valid and prevents the policy from becoming effective as an insurance contract, if the insured, at the time the policy is delivered, is afflicted with a disease or infirmity which increases the risk under the policy."

In Hughes v. American Nat. Ins. Co., Tex.Civ.App., 146 S.W.2d 470, this doctrine is announced again.

■ In our opinion the testimony shows with certainty that the deceased was not in good health but was afflicted with cancer on October 2, 1939, when the insurance contract was reinstated by agreement; that the court so determined in his findings of fact. The insurance contract provided that no obligation was assumed by the insurer unless on the date the policy was delivered and the date reinstated the insured was in good health. The appellee in the contract assumed the entire responsibility for the correctness of the statement made in the application as to the health and physical condition of the deceased on which the policy was delivered and when reinstated. Under the law her good health at such times was a condition precedent to the policy's being effective and enforceable.

■ If we are correct in these conclusions it is unnecessary to consider appellee's contention that appellants were liable under the provisions of Sections 13 and 14 of Article 5068—1, Vernon's Annotated Civil Statutes, for we do not think the Legislature intended to create a valid and effective insurance contract and fix liability thereon when no such contract was made between the insurer and the insured. We think also the record shows a bona fide controversy between the parties as to the sufficiency of the proof of death furnished.

For the reasons stated the judgment is reversed and here rendered in favor of appellants.