WOODMEN OF THE WORLD LIFE INS. SOC. *v.* JOHNSON.

(In Banc.   Jan. 10, 1944.)

[16 So. (2d) 285.   No. 35488.]

Ely B. Mitchell, of Corinth, for appellant.

**W. C. Sweat,** of Corinth, for appellee.

Argued orally by **Ely B. Mitchell,** for appellant, and by **W. C. Sweat,** for appellee.

**Roberds, J.,** delivered the opinion of the court.

This appeal is from a jury verdict, and judgment pursuant thereto, for $500 in favor of appellee, representing permanent disability benefits based upon a certificate of membership of appellee in appellant Society.

Appellee failed to pay the premium due December 1st, 1940, and thereby became suspended as a member of the Society. Under the by-laws, made a part of the certificate, he had the right to again become a member by paying the delinquent installments within three months subsequent to January 15th, 1941, "provided he is in good health at the time of such payment and remains in good health for thirty days—" thereafter. Appellee paid his delinquent installments on January 18th, 1941. He claims to have had a sudden and unexpected serious heart attack on February 20th, 1941, rendering him permanently disabled within the provisions of his certificate.

Appellant contends that appellee was not in good health on January 18th, 1941, nor was he in such health for thirty days thereafter. And on this question he first urges that the lower court committed error in its definition of good health as set out in the instructions granted appellee, plaintiff below. These instructions told the jurors that if they believed from the preponderance of the evidence "that prior to the time he suffered a heart attack he was in reasonably good health," that this finding would comply with the foregoing quoted provision. It will be noted that the by-laws use the expression "good health." The question is whether the addition by the court in the instruction of the adverb "reasonably" sufficiently defined the measure of health required by the by-laws.

All of the cases, without exception, hold that the term "good health" in these policies does not mean perfect health. Grattan v. Metropolitan Life Ins. Co., 92 N. Y. 274, 44 Am. Rep. 372; Burr v. Policy Holders' Life Ins.

Ass'n, 128 Cal. App. 563, 17 P. (2d) 1014; Alabama Gold Life Ins. Co. v. Johnston, 80 Ala. 467, 2 So. 125, 59 Am. Rep. 816; Atlantic & B. R. Co. v. Douglas, 119 Ga. 658, 46 S. E. 867; Mid-Continent Life Ins. Co. v. House, 156 Okl. 285, 10 P. (2d) 718; Chambers v. Metropolitan Life Ins. Co., 235 Mo. App. 884, 138 S. W. (2d) 29; Texas Independence Life Ins. Co. v. Pickens (Tex. Civ. App.), 153 S. W. (2d) 884; Schuetzel v. Grand Aerie Fraternal Order of Eagles (Mo. App.), 164 S. W. (2d) 135, and many other cases which might be cited.

In the Alabama Gold Life Ins. Co. case, supra [80 Ala. 467, 2 So. 131, 59 Am. Rep. 816], the court said: "It cannot be supposed that one who, for the purpose of procuring insurance, alleges himself to be in good health, shall be understood as warranting himself to be in perfect and absolute health; for this is seldom, if ever, the fortune of any human being; and 'we are all born,' as said by Lord Mansfield in Willie v. Poole, Park, Ins. 555, 'with the seeds of mortality in us.' "

The expression does not imply physical perfection and freedom from all the ills to which flesh is heir. It is not used in a scientific or technical sense. It is used in its common and ordinary sense by people describing their own condition. It is comparative. The courts have not adopted any set language in defining the term. A review of the foregoing cases will illustrate that, but turning to the authorities nearest in point it was said in Kroon v. Travellers' Ins. Co., 290 Ill. App. 35, 7 N. E. (2d) 935, 937: "The expression, good health, as employed in insurance contracts, is ordinarily construed to mean a reasonably good state of health." Clover v. Modern Woodmen, 142 Ill. App. 276.

In Burr v. Policy Holders' Life Ins. Ass'n, supra [128 Cal. App. 563, 17 P. (2d) 1015], the court used this language: "A warranty that the insured is in good health is not broken unless the insured has an ailment of a character so well defined as appreciably to affect his health. Only an ordinary and reasonable degree of health

is required and this question is generally to be determined by the trier of fact."

In Maine Benefit Ass'n v. Parks, 81 Me. 79, 16 A. 339, 340, 10 Am. St. Rep. 240, it was said: "The health of the body required to make the policy attach does not mean perfect and absolute health; for it may be supposed that this is seldom to be found among men . . . Nor can there be any other definition or rule as to this requirement of good health than that it should mean that which would ordinarily and reasonably be regarded as good health. Nor should we be helped by saying that this good health must exclude all disorders or infirmities which might possibly shorten life; for, as has been well said in an instructive English case, that may be said of every disorder or infirmity. . . . But it must obviously be very difficult to determine questions like these by any general rule. And it is usual practice of courts to leave these questions to the jury."

In 14 R. C. L., par. 247, p. 1069, it is stated that: "Only an ordinary and reasonable degree of health is required, and this question is generally to be determined by the jury."

While we think it would be more helpful to the jury to define good health as ordinary and reasonably good health, free from any grave or serious disease or ailment that seriously affects the general soundness and healthfulness of the applicant, yet we think the word "reasonably" necessarily excludes all such disease and ailment as set out in the forgoing suggested instruction, and that the jurors would so understand.

Appellant obtained an instruction on this question in the words of the by-laws. Appellee says this instruction cured the error, if any, in his instructions. The above holding makes it unnecessary for us to pass on this question. But appellant says that the instructions are contradictory and constitute reversible error. The instructions granted appellee supplement, modify and clarify,

but do not conflict with and contradict, those granted appellant. Ellis v. Ellis, 160 Miss. 345, 134 So. 150.

Appellant next urges that the instructions granted appellee, plaintiff below, were erroneous in prescribing the standard for testing whether the appellee was totally disabled at the time of the trial in January, 1943. The by-laws of the Society defined the nature and extent of the disability in this language: ''—that he has suffered bodily injury, through external violent and accidental means or by disease, and that he is and will be permanently, totally, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations or performing any work for compensation of value—.'' Plaintiff's instructions told the jury that he was disabled if the jury should find from the preponderance of the evidence ''that on the 20th day of February, 1941, plaintiff suffered a heart attack and that he has since been suffering with a severe heart disease and that prior to the time he suffered the heart attack he was in reasonably good health, and if you further believe from the preponderance of the evidence that since said time on account of said disease he has been unable to carry on his usual occupation and is unable to do any substantial amount of work by which he can gain a livelihood.''

Another instruction was in these words: ''The court further instructs the jury for the plaintiff that to be totally disabled does not require a condition of complete helplessness but if a person is unable to carry on his usual occupation and unable to do any considerable amount of work by which he can gain a livelihood then he is totally disabled.'' There were other similar instructions.

Without elaborating upon the question, we think these instructions properly prescribe the yardstick for the guidance of the jury in passing upon the existing physical condition of the plaintiff under the rules and facts of the following cases: Metropolitan Casualty Ins. Co. v. Cato, 113 Miss. 283, 74 So. 114; Columbian Mut. Life Ins. Co. v. Craft, 186 Miss. 234, 185 So. 225; Reliance Life Ins.

Co. v. Cassity, 173 Miss. 840, 163 So. 508; Mutual Ben., Health & Acc. Ass'n v. Mathis, 169 Miss. 187, 142 So. 494; Equitable Life Assur. Soc. v. Serio, 155 Miss. 515, 124 So. 485; New York Life Ins. Co. v. Bain, 169 Miss. 271, 152 So. 845; American Bankers' Ins. Co. v. White, 171 Miss. 677, 158 So. 346; Metropolitan Life Ins. Co. v. Lambert, 157 Miss. 759, 128 So. 750; Metropolitan Life Ins. Co. v. Evans, 183 Miss. 859, 184 So. 426; Volunteer State Life Ins. Co. v. Davis (Ala. App.), 14 So. (2d) 162, certiorari denied (Ala. Sup.), 14 So. (2d) 168; New York Life Ins. Co. v. Bird (Fla.), 12 So. (2d) 454.

Appellant further urges that the lower court erred in announcing the rule as to the future and permanent condition of the plaintiff as defined in the instructions granted him. One of the instructions told the jury, ". . . if you further believe from the preponderance of the evidence that there is no reasonable probability that he will ever recover from said disease or be able to carry on his usual occupation, or do any substantial amount of work by which he can gain a livelihood . . . ," that the plaintiff is then permanently disabled.

By Instruction No. 4 granted the plaintiff, the jury was told: "The court instructs the jury for the plaintiff that in order for a person to be permanently disabled it is not necessary for his disability to be such that he has no hope of ever recovering, but if his disability is such that there is no reasonable probability that he will ever recover or become cured or that he will ever become substantially better, then his disability is permanent."

In another instruction the court told the jury that if it believed from the preponderance of the evidence that "—there is no reasonable probability that he will ever recover or become well or that he would be substantially better, . . . " then plaintiff is permanently disabled.

On the question of permanent disability we think these instructions properly announce the law under the cases above cited and also under New York Life Ins. Co. v.

Best, 157 Miss. 571, 128 So. 565, and Equitable Life Assur. Soc. v. Serio, 155 Miss. 515, 124 So. 485.

It is also contended by appellant that the evidence in this case does not support the finding of the jury that appellant was in good health when he was re-instated as a member of the Society and that he was permanently and totally disabled under the disability provisions of the by-laws. We have carefully examined and considered the evidence and, without undertaking to set it out, we think it was ample to support the verdict of the jury on these questions of fact.

Appellant also assigns other errors, all of which we have considered. We find no reversible error, if error at all, in these assignments.

Affirmed.