AMERICAN BANKERS' INS. CO. *v.* WHITE.

(Division A. Jan. 7, 1935.)

[158 So. 346. No. 31455.]

**J. M. Morse,** of Poplarville, for appellant.

Hathorn & Williams, of Poplarville, for appellee.

Argued orally by **J. M. Morse**, for appellant, and by
**E. B. Williams**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Appellee recovered a judgment against the appellant
for two thousand four hundred dollars, for the period
of twenty-four months at the rate of one hundred dollars

a month, on a policy of insurance issued to her, insuring her against total disability caused from accident or disease. On the 9th day of February, 1932, appellee was standing on one of the sidewalks adjacent to one of the streets in the city of New Orleans, watching a carnival crowd, when some object, accidentally thrown by one of the revelers in the crowd, struck her in the eye, bruising and injuring the same. She returned to her home, Poplarville, Mississippi, and on the next day consulted her physician, Dr. Davis, and remained under his care and treatment until the date of the trial.

The testimony shows that the vision in appellee's right eye, the one injured, was less than one-fourth of normal, and that of her left eye was two-thirds of normal. The proof shows that from the date of the injury until the date of the trial she continued to suffer from both of her eyes, and that frequently she suffered from hemorrhages from her nose. Her occupation was that of a housewife, performing the usual duties in connection therewith, and while her eye was in this condition she did some sewing, occasionally mending a garment, and helped with the cooking. She testified that the performance of such duties produced nervousness, pain, sick headaches, and often hemorrhages from her nose. Her language in this connection was that to engage in her usual household duties caused discomfort to her; but we think the discomfort alluded to was the severe pain caused by sick headaches.

An expert testified that she was totally and permanently disabled, and that to attend to any of the usual household duties was injurious to her eyes, and that she should not perform them; her attending physician, Dr. Davis, testified to the same effect.

It was shown by the attending physician of appellee, on April 16, 1932, that a statement was made by him, on a blank form furnished by the appellant insurance company, that appellee was partially disabled; that she could

cook, but could not sew or read; and that a form was also furnished to the appellee, which she filled out and signed. His testimony is to the effect that while she was totally disabled at that time, if she could do anything, he was of the opinion that she could recover only as for partial disability. In answering the following questions, he testified as follows:

"Q. You haven't seen her professionally every week during that time have you doctor? A. I couldn't say for sure I have; I have seen her oftener than that sometimes but what you would probably call 'calls' may be I haven't.

"Q. I mean professionally as a call? A. There's hardly ever a week that we haven't—that is there's hardly ever a week that she didn't complain about it.

"Q. She lived right next door to you? A. Yes.

"Q. You would drop over and see them; you were constantly in each other's house weren't you? A. Well, I don't think there was a week that passed that she didn't complain with the eye."

The proofs executed by the appellee and Dr. Davis were forwarded to the company on April 25, 1932; the company 'wrote her rejecting the claim for the reason that the proofs were executed more than two months after the injury and it was impossible for the company to make a favorable investigation of the case.

The clause in the insurance contract upon which the suit is predicated, is: "*Total Accident Disability One Hundred Dollars per Month* or if such injury, as described in the Insuring clause, shall wholly and continuously disable the Insured from his occupation. such disability beginning within ninety days following the injury, the company pay for one day or more, and so long as the Insured shall live and suffer such disability, a monthly indemnity at the rate of *One Hundred* ($100) *Dollars*, as hereinafter provided."

The insuring clause provided for the indemnity of an

insured against loss from bodily injury through accidental means. Another clause of the policy allowed for partial accident disability from such an injury, not exceeding three consecutive months, a monthly indemnity of forty dollars a month; and another allowed the insured pay for one day or more, not to exceed twelve consecutive months, at one hundred dollars a month, for disability resulting from disease or illness, the cause of which originates not more than thirty days after the date of the policy. Under the heading "A'dditional Provisions," in the contract of insurance, is the following: "(a) *This policy does not cover any loss from death or disability caused by or resulting in whole or in part*, (1) from injury received or sickness contracted while outside the United States or Canada, or while engaged in military service during time of war, or from riding in or on, operating or falling from an airplane or airship of any description, except as provided in Part M, or from insanity or while under the influence of an intoxicant; (2) motor cycle riding; (3) or from venereal disease or diseases or injury of organs not common to both sexes, or *for any time except that during which the insured is under the professional care and regular attendance of a legally qualified physician, at least once every seven days, by reason of the injury or sickness on which the claim is based*." (Italics ours.) Only the italicized part of this provision of the contract is material here.

"(b) Strict compliance on the part of the Insured and Beneficiary with all the terms and conditions of this policy shall be a condition precedent to recovery hereunder, and any failure in this respect shall forfeit to the company all right to any indemnity."

1. It is contended that the full extent of the appellant's liability here is for one month's total disability and for three months' payment of forty dollars a month; that the evidence as to the injury to appellee's eye demonstrates that the resulting consequences do not es-

tablish a case of total disability within the meaning of the contract. The language "shall wholly and continuously disable the Insured from his occupation," or words of similar import, have many times been before this court; and it has been held that it is not necessary that the insured be wholly incapacitated to perform any duty incident to his usual employment or business, but that if the insured is prevented by his injury or illness from doing the substantial acts required of him in his business or occupation, or if his physical condition is such that, in order to be cured or to prolong his life, ordinary care and prudence require that he cease all work, he is totally disabled within the meaning of such policies. See Mutual Benefit Health & Accident Association v. Mathis, 169 Miss. 187, 142 So. 494; Equitable Life Assurance Soc. v. Serio, 155 Miss. 515, 124 So. 485; New York Life Ins. Co. v. Best, 157 Miss. 571, 128 So. 566; Metropolitan Life Ins. Co. v. Lambert, 157 Miss. 759, 128 So. 750; Lamar Life Ins. Co. v. Catlett (Miss.), 139 So. 455. We are, therefore, of the opinion that the question of total disability herein is one for the jury.

The serious question presented in this case is whether the appellee, by her proof, established compliance with that provision of the contract which required the insured to be under the professional care and regular attendance of a legally qualified physician at least once every seven days. Mrs. White was not examined as to this feature, but the evidence of her attending physician is set forth above; and that is all the evidence on the subject.

The court below was of the opinion that the above evidence was sufficient to establish that the insured had complied with this provision of the contract, to which we cannot agree. The jury were instructed by the appellee that it was necessary, in order to recover, to find that she was under the professional care and regular attendance of a physician, and the jury so found. But we

are of the opinion that the evidence of the attending physician is wholly insufficient to establish this condition precedent to her recovery. The contract was that the insurer would indemnify the insured only for the time during which she was under the professional care and regular attendance of a physician, at least once every seven days. The physician did not know whether he had so done or not; the fact that he saw his patient at his home socially, without further explanation, did not establish attendance upon her in a professional capacity. Social calls cannot be distorted into professional attendance, unless during the social call it shall appear that professional care and attendance was solicited and received. The evidence indicates that there was professional care and attendance given the insured, but as to the extent thereof the record is wholly silent.

Appellee insists that this court should, by construction, relieve this portion of the contract of its rigor, on the theory that it is unreasonable; but we cannot assume authority to rewrite the contract for the persons who have entered into it because it now appears that, in some cases, the personal care and attendance of the physician would be unreasonable. A case of that kind is not here before us. The general rule is that where a clause in a contract does not violate any statute, or public policy, and is unambiguous and certain in its provisions, it is enforced as written. American L. & A. Ins. Co. v. Nirdlinger, 113 Miss. 74, 73 So. 875, 4 A. L. R. 871; Continental Casualty Co. v. Hall, 118 Miss. 871, 80 So. 335; Brown v. Powell, 130 Miss. 496, 94 So. 457.

Appellee seems to argue, further, that this provision of the contract is a part of the proof of disability, and that the rejection of the claim relieved her from the performance of her part of the contract relative to the care and regular attendance of a physician, citing Provident Life & Acc. Ins. Co. v. Jemison, 153 Miss. 53, 60, 120 So. 180; New York Life Ins. Co. v. Salmon (Miss.), 157 So.

344. Both of these cases involved a waiver of the proof of the injury provided for by the contract, and do not, in our judgment, remotely affect the case at bar. There is no reason why the insured could not have complied substantially with this clause of the contract, and it may have been absolutely necessary from the standpoint of the insurer, in order that it might know that the disability was continuing and total. The illustration that a man may have lost both arms, or legs, or eyes, and that a physician could do no more, is not available here, because the injury is to the eyes, the sight of which may by proper and constant attention be restored.

In our independent investigation, we find in Cyc. of Ins. Law, vol. 7, sec. 1679, this statement: ''So, a provision in an accident insurance policy 'providing indemnity for both partial and total permanent disability, that no indemnity shall be payable unless the insured be regularly attended by a qualified physician, at least once in each seven days during the time for which claim is made, applies only to provisions for partial disability, and not to those providing indemnity for total permanent disability, since it would be unreasonable to assume that such a medical attention could have been contemplated. And, even when applicable, such a provision merely requires a substantial compliance, a slight variance of a day, or even a few days from week to week, not being sufficient to effect a material noncompliance.'' The note therein cites the case of Harasymczuk v. Massachusetts Acc. Co., 127 Misc. 344, 216 N. Y. S. 97, which is an opinion of a nisi prius court in a case where there was total permanent disability of the insured and further medical treatment ineffectual and unnecessary. To like effect is Cook v. Benefit League of Minnesota, 76 Minn. 382, 79 N. W. 320, although the particular clause of an insurance contract was not there before the court.

The case at bar is not one of total permanent disability,

and we cannot say that the contract here in this respect should not be available to the insurer in order that it might protect itself against fraud. The required attendance of a physician might ·effect a cure or restore the housewife to such condition as to enable her to perform her duties as such.

The contention in this case that the proof of loss is an estoppel of the insured is without merit. See New York Life Ins. Co. v. Salmon, supra, where the exact question is decided.

The appellant did not request a peremptory instruction, and the proof shows, to some extent, that appellee was under the personal care and attention of a qualified physician; so this case will be remanded for another trial.

Reversed and remanded.