WORLD INSURANCE Co. *v.* McKENZIE.

Division A.  Dec. 17, 1951.

No. 38132 (55 So. (2d) 463)

810

**J. M. Alford,** for appellant.

W. H. Watkins, Jr., for appellee.

**McGehee, C. J.**

This is an appeal from a jury verdict and judgment of $1,300 rendered in favor of the appellee, Andrew J. McKenzie, Sr., and against the appellant, World Insurance Company, Omaha, Nebraska, on "A Lifetime Disability Benefit Policy', and because of the total physical disability and total loss of time suffered by the plaintiff for the period beginning on January 26, 1948 and continuing until the time of the filing of the suit on April 3, 1950, and on until the trial thereof, and for which total physical disability and total loss of time the insurance company contracted and agreed to pay the sum of $50 per month to the insured, beginning with the first medical treatment during the disability, which was on the said 26th day of January, 1948, for disability resulting from sickness which, in the literal language of one of the provisions of the policy, "* * * confines the Insured continuously within doors, provided the Insured is continuously under the professional care and regular attendance therein of a licensed physician, * * * and such sickness necessitates total disability and total loss of time."

The next succeeding provision of the contract of insurance is that "The Company will pay indemnity at the rate of Fifty ($50.00) Dollars per month, beginning with the first medical treatment during disability, for a period not exceeding one month, for disability resulting from such sickness which does not confine the Insured continuously within doors, provided the Insured is continuously under the professional care and regular attendance of a licensed physician, * * *, and such sickness necessitates total disability and total loss of time."

The policy was applied for on December 4, 1946, and was issued to the insured on January 13, 1947, and the premiums duly paid in accordance with the provisions thereof.

The sickness of the insured is claimed to have consisted of arthritis, and he first consulted a physician for medical treatment during disability on the said 26th day of January, 1948. The physician then consulted prescribed aspirin and codeine to relieve the pain, which in his opinion was due to neuritis. The insured took the treatment prescribed until he used all of the medicine called for under this prescription. Thereupon he consulted another physician, either in February or March 1948, when the latter diagnosed his condition as being arthritis, and the insured remained under his professional care and treatment throughout the remaining portion of the period covered by this suit.

Other than as last above stated, there is no apparent conflict in the evidence introduced upon the trial of the case, unless it can be said that the plaintiff conceded in his testimony that in filling out the proof of his claim, it may have been stated in the application for the benefits under the policy that his disability began on July 1, 1948, whereas he testified upon the trial that he was totally and permanently disabled and suffered a total loss of time from the said 26th day of January 1948. His testimony was fully corroborated by the second physician whom he consulted, and their testimony was

in nowise disputed by the other doctor, who did not treat the insured after said date and who was the sole witness called by the defendant insurance company. In fact, a letter written to the insured by the insurance company on *June 12, 1948,* acknowledged the prior receipt by the company of the claim for the benefits under the policy, and enclosed therewith the necessary forms to be completed and returned to it within ten days.

As to the apparent conflict in regard to the date of the commencement of the insured's illness, he was asked: "When did you tell them in that application that your total disability begun? A. July—I don't remember. * * * Q. But you don't say you didn't make report to the company that your disability begun, 'on what date did you quit work entirely', and your answer is 'July 1, 1948', isn't that right?" The proof of the claim was evidently being used in court in thus cross-examining the witness, but the same was not offered in evidence; hence, we do not have the benefit of all the questions and answers. The witness did not answer this question, but he later testified that it was in July that he "got down" and was unable to be up and about for two months, and as indicated in the last question above quoted he had stated in his proofs of claim the answer "July 1, 1948" in response to a question therein "On what date did you quit work entirely"; and evidently in giving the answer he had in mind the beginning of the period when he was unable to be out of bed. At any rate, both the conflict between the testimony of the two physicians, as to whether the insured had neuritis or arthritis, and the conflict contended for by the appellant as to the date when his total disability originated were resolved by the jury in favor of the plaintiff.

On July 21, 1948, the appellant wrote a letter to the insured denying liability solely on the following ground: "The file in connection with your claim indicates that you have been suffering with arthritis for some time, and that you were treated for the condition prior to

the time you applied for insurance with this company. Inasmuch as the origin of the arthritis predates your policy, we have no alternative but to deny recognition in connection with your claim." However, no proof was offered to sustain the position of the insurer as above quoted from its letter denying liability. The proof of the claim, which was presumably in possession of the appellant, and which would have disclosed *all* of the questions and answers and have shown the full context of the representations made therein by the insured, was as heretofore stated not introduced in evidence.

It is to be observed that both of the policy provisions quoted in the first and second paragraphs of this opinion required that the insured should be "continuously under the professional care and regular attendance of a licensed physician, * * * and such sickness necessitates total disability and total loss of time." That the first of said provisions requires that the "regular attendance" of the physician shall be within doors where the insured is continuously confined. If this provision should be given a literal interpretation, it would mean that not only the patient would have to remain "continuously" within doors, but that the doctor would have to be in "regular attendance" at the place where the patient is confined within doors, because of the use of the word "therein" which immediately follows the words "regular attendance". And it is obvious as to a nonconfining sickness, such as that mentioned in the clause quoted in paragraph two of this opinion, it would rarely ever be the case that the continuous professional care and regular attendance of a licensed physician would be necessary if this requirement is to be literally construed, and especially the words "regular attendance".

In the instant case the proof discloses without dispute that the insured was unable to pursue the duties of his regular occupation of farming to any extent during the years of 1948, 1949, or 1950; that the arthritis which began in his arm as early as January 26, 1948, spread

from one joint to another, getting into his hips and shoulders, and it was sufficiently painful to cause a total disability to do any work at all and a total loss of time; that he consulted the doctor who was treating him for arthritis a few times during the period for which the benefits are sued for, but he was continuously under this doctor's professional care through the period in question; that he remained in his home at least 75 percent of the time during the day, and, of course, through the night; that he would go from his country home to town from time to time and get his prescription of aspirin and codeine refilled for the relief of his pain and suffering; that in most instances he would call at the drug store where the druggist would get in touch with the physician and obtain his consent to the refilling of the prescription; and that when he was ever out of the house or away from home it was either for the purpose of exercising the joints of his body under the advice of his physician, and as a part of the treatment prescribed, or for the purpose of occasionally going to see the doctor, but usually to see the druggist since he consulted the doctor in person only a few times, according to the most liberal view that may be taken of the testimony of the insured in that behalf.

This physician testified in full corroboration of the testimony of the insured as to seeing him a few times and as to his authorization of the druggist from time to time to refill the prescriptions, and as to the total disability and loss of time of the insured. The doctor did not at any time visit the home of the insured, but was content to prescribe for him such treatment as he deemed necessary to relieve his pain, and was of the opinion that this was all that he could have done if the patient had come to his office or he had gone to the home of the patient.

There was no proof offered to show that the insured had ever suffered from arthritis prior to the 26th day of January, 1948. It would seem immaterial whether he

was suffering from arthritis or neuritis on that date, since in either instance the disability existed, and there is no proof that he had suffered from either of these ailments, or any other disease prior to that date.

In other words, the defense against liability made on this appeal is that the evidence was insufficient to prove that the insured was either continuously confined within doors and continuously under the professional care and regular attendance therein of a licensed physician under the first clause of the policy in question, or was continuously under the professional care and regular attendance of a physician under the second clause hereinbefore quoted. There was no offer to prove that the insured has been able to perform, or has attempted to perform any of the duties of his employment, or do any other work, since January 26, 1948.

In the case of American Life & Accident Ins. Co. v. Nirdlinger, 113 Miss. 74, 73 So. 875, 876, 4 A. L. R. 871, it was said, among other things, that "There are a great many cases construing the meaning of policies requiring that the insured must be confined to his bed, or to the house, or within the house. In a number of these cases, as in the King Case, the insured had gone out of the house on the porch under the advice of his physician. A majority of these cases hold that this would not prevent a recovery. This clause is to be liberally construed to give effect to the intent and purpose of the contracting parties, and means that when the insured is ill enough to be confined to his house and is so confined, except when he gets up under the advice of a physician in order to try to improve his health, then a recovery may be allowed. A few courts strictly construe similar clauses in insurance policies, but the decided weight of authority is to give such clauses a liberal construction. * * *"

In the instant case, the appellant contends that, at most, the insured would be entitled to recover only for a period of one month under the second or nonconfining sickness clause quoted in the second paragraph of this

opinion and under the clause quoted in the first paragraph hereof for the two months beginning in July 1948, when he was confined to his room. However, under the interpretation of the first clause, as contended for by the appellant, to the effect that the insured would have to be continuously confined within doors and continuously under the professional care and regular attendance *therein* of a licensed physician, the insured would not be entitled to recover anything under that clause since the physician did not attend him in his home where he was confined during those two months. Nor would the insured be entitled to recover anything under the second clause in question if the same is to be interpreted as requiring the insured to be continuously under the professional care and regular attendance of a licensed physician, since there was no regular attendance of the physician in the sense that the patient called on him regularly or that he attended the patient regularly throughout the period sued for.

Under a literal interpretation, the insured would be denied any benefits whatsoever under his policy, notwithstanding that it is undisputed that he was totally disabled and suffered a total loss of time because of his disability throughout the period sued for. This would mean that a person carrying one of these policies could obtain no benefits thereunder if he should suffer any injury resulting in total disability and total loss of time and where the personal attendance of a physician can serve no useful purpose and is foregone, and where continuous professional care in prescribing medicine for the relief of the pain is the only service that a physician could render.

In volume 29, American Jurisprudence, Insurance, Section 1174, p. 885, it is said that: "In some cases, however, the view is taken that the attendance or care of a physician as required by a health or accident policy is merely for an evidentiary purpose, and does not necessarily preclude a recovery for disability if it may be

otherwise proved. Moreover, it is generally agreed that such provisions are not applicable to cases of permanent disability or of paralysis or amputation, where further care or treatment is rendered useless.'' In support of this text there is cited an annotation in 115 A. L. R., beginning on page 1062, which cites a number of cases, to the effect that such provisions as those here in question do not apply to cases of permanent and total disability, but only to cases of temporary or partial disability. Moore v. Standard Acc. Ins. Co., 245 Ill. App. 300; Inter-Ocean Casualty Co. v. Brown, Tex. Civ. App. 31 S. W. (2d) 333; American Nat. Ins. Co. v. Briggs, Tex. Civ. App., 70 S. W. (2d) 491; Davidson v. First American Ins. Co., 129 Neb. 184, 261 N. W. 144; North American Acc. Ins. Co. v. Henderson, 180 Miss. 395, 177 So. 528; Hunter v. Federal Casualty Co., 199 App. Div. 223, 191 N. Y. S. 474; and Harasymczuk v. Massachusetts Acc. Co., 127 Misc. 344, 216 N. Y. S. 97.

In the Henderson case, supra, [180 Miss. 395, 177 So. 530.] the Court said:

''The third point urged by appellant is that appellee has forfeited his right to recovery in this case because of appellee's failure to receive regular medical attention, and appellant points to the following provision in the policy: 'Indemnity will not accrue hereunder in excess of the time insured is, by reason of the injury or sickness or disease, under the professional care of a legally qualified physician or surgeon other than insured.'

''The only case cited by appellant in support of its contention on this point is American Bankers' Ins. Co. v. White, 171 Miss. 677, 158 So. 346; but in that case the policy requirement was materially different. Moreover, that case was not one of permanent disability, and the court called attention to the fact that provisions in accident and health policies for regular attendance of a qualified physician have no application to an established permanent disability, since it would be unreasonable to assume that in such a case regular medical

attention was contemplated. In the case now before us, all the physicians who were consulted testified that there was nothing which medical attention could do for appellee except by a surgical operation, and, until that was done, the disability would continue unabated, the only other means of alleviation being a truss which appellee had tried but was unable to wear. Since there was nothing that a physician, by professional care, could do for the appellee, short of surgery, regular attendance would have been without use or purpose. When the reason for a contract provision disappears, the provision itself disappears so far as being a material element in the legal problems at hand.''

The case of American Bankers' Ins. Co. v. White, [171 Miss. 677, 158 So. 349.] referred to in the foregoing quotation from the Henderson case, would appear on a first reading of the opinion therein to be in conflict with the decisions relied upon by the appellee, but it was expressly pointed out in the White case that: ''The case at bar is not one of total permanent disability, and we cannot say that the contract here in this respect should not be available to the insurer in order that it might protect itself against fraud. The required attendance of a physician might effect a cure or restore the housewife to such condition as to enable her to perform her duties as such.'' That case involved an injury to the insured's eye which a skillful physician may have been able to cure by regular attendance, observation and treatment thereof.

Moreover, the case of Equitable Life Assurance Society v. Serio, 155 Miss. 515, 124 So. 485, New York Life Ins. Co. v. Best, 157 Miss. 571, 128 So. 565, 566. Metropolitan Life Ins. Co. v. Lambert, 157 Miss. 759, 128 So. 750, and numerous other decisions of this Court, have adopted a liberal construction of the provisions of an insurance policy relating to total and permanent disability; and while the cases above mentioned in this paragraph are not in point in regard to a provision requiring continuous

professional care and regular attendance of a physician, they do disclose that the court has given a liberal construction in favor of the insured of the provisions of policies as to what is necessary to render the insurer liable in cases of total and permanent disability.

For instance, in the recent case of American Life Ins. Co. v. Byrd, 210 Miss. 50, 48 So. (2d) 614, 615, where there was involved a requirement that in order to recover the insured should be "under the care of and attended at least once in each seven days by a legally qualified physician or surgeon", the Court said: "This provision of the policy is not controlling in cases of total permanent disability. In the case of American Bankers' Ins. Co. v. White, 171 Miss. 677, 158 So. 346, 349, the Court quoted with approval from the Cyc. of Ins. Law, vol. 7, sec. 1679, the following: 'So, a provision in an accident insurance policy providing indemnity for both partial and total permanent disability, that no indemnity shall be payable unless the insured be regularly attended by a qualified physician, at least once in each seven days during the time for which claim is made, applies only to provisions for partial disability, and not to those providing indemnity for total permanent disability, since it would be unreasonable to assume that such a medical attention could have been contemplated. * * *' "

Under a total and permanent disability provision of an insurance policy where the insured is suffering such disability by reason of a disease not requiring the regular attendance of a physician, but one requiring continuous professional treatment and medicine for the alleviation of pain, such a provision should be construed in view of the purpose which it was intended to serve— that of guarding against fraudulent claims. The construction to be given should be liberal to carry out the spirit and purpose of the contract. The law will not enforce an idle and useless formality such as the requirement of the regular attendance of a physician when the same can serve no useful purpose, as in cases

of total and permanent disability from an incurable case of arthritis and other disabling sickness.

The error complained of in the instruction granted to the jury on behalf of the plaintiff was fully cured by an instruction to the defendant, but under the interpretation that we have given to the provisions of the policy in question, ██ ██ there is no substantial conflict in the evidence in material particulars, and in such case the plaintiff was entitled to the peremptory instruction requested, and hence any erroneous rulings made or instructions given by the court become immaterial under the well established rule of this Court in that behalf.

We have concluded, therefore, that the judgment appealed from in the instant case must be affirmed.

Affirmed.