44 N.J. Super. 575 (1957)
131 A.2d 312
ALEXANDER YAGER, PLAINTIFF-RESPONDENT,
v.
AMERICAN LIFE INSURANCE ASSOCIATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1957.
Decided April 22, 1957.
*577 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Edward J. McCardell, Jr., argued the cause for appellant (Messrs. Jamieson & Walsh, attorneys).
Mr. William Reich argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
The defendant may be classified as an incorporated fraternal benefit society which affords monetary assistance to its members in the event of illness, accident, or death. On or about January 31, 1941 the plaintiff entered the membership of the association. Embodied in his application was the promise that, if accepted, he would "obey and follow all present rules, regulations and by-laws of the association, as well as all such as may be brought in the future and accept them as binding" on him.
The plaintiff was furnished with a membership certificate, which provided among other things that:
"It is hereby agreed by the Insured Member holding this Beneficiary Certificate that the Certificate, any riders or endorsements the Charter or Articles of Incorporation, the Constitution and By-Laws of the association and the application for membership and declaration of insurability signed by the applicant, copy of which is hereto attached and made a part hereof with all amendments to each thereof, shall constitute the agreement between the association and the Insured Member, and any changes, additions, or amendments to said Charter, or Articles of Incorporation, Constitution, or By-Laws, duly made or enacted subsequently to the issuance of this Beneficiary Certificate shall bind the Insured Member and his Beneficiary or Beneficiaries and shall govern and control the agreement in all respects the same as though such changes, additions, or amendments had been made prior to and were in force at the time of the application for membership."
*578 Attached to the certificate was a supplementary sick benefit rider which stated that:
"The terms and conditions relative to weekly sick benefits under this supplementary sick benefit rider are governed in every respect by the provisions of the by-laws in force at the time member reports illness and applies for sick benefits."
At that time paragraph 12 of section 5 of the by-laws of defendant association, adopted at its convention in June, 1940, to become effective on January 1, 1941, provided:
"No benefits will be paid on such medical reports, which do not prove that the member had need of at least two (2) treatments weekly. Exceptions are made in such cases, which, according to the general medical science and practice, do not require two treatments weekly."
In June 1948 paragraph 1 of article 10 of the by-laws was amended to read:
"Application, admission and insurance of members for benefits in case of illness, accident, hospitalization, partial or total disability shall be in accordance with the existing rules and regulations for such benefits and such other rules, regulations, terms, and conditions as the Board of Directors may prescribe from time to time."
Pursuant to the authority of the amendment, the board of directors of the defendant on October 5, 1949 promulgated the following rule:

"1. No Sick Benefit Shall Be Paid:
(c) for any period of illness or disability while the insured did not receive at least two (2) treatments weekly from the attending physician."
On July 5, 1955 the plaintiff became incapacitated by illness to pursue his work, and his sickness admittedly continued for a period of 12 weeks. During the first two weeks the plaintiff received at least "two treatments weekly from the attending physician." For his illness during those weeks the defendant paid to him sick benefits at the rate *579 of $10 per week. The attending physician then resolved that his professional services were not reasonably required by the plaintiff twice weekly, and accordingly he reduced the number and frequency of his weekly "treatments" to less than two, whereupon the defendant declined to disburse to the plaintiff the monetary benefits for the last ten weeks of his illness. The plaintiff has obtained in the Mercer County District Court a judgment of $100 against the defendant, from which the latter prosecutes the present appeal.
The fundamental question addressed to us by the present appeal is whether an amendatory regulation promulgated by the board of directors subsequent to the admission of the plaintiff to membership, imposing unqualifiedly the requirement of two medical treatments weekly to entitle the member to sick benefits, is valid.
In quest of a response, we turn initially, as did the trial judge, to the pertinent decisions in O'Neill v. Supreme Council, Am. L. of Honor, 70 N.J.L. 410, 420 (Sup. Ct. 1904); Sautter v. Supreme Conclave, Imp. Order Heptasophs, 76 N.J.L. 763 (E. & A. 1908); Clare v. International Brotherhood, &c., Local 55, 14 N.J. Misc. 910 (Sup. Ct. 1936); Kopacka v. Roman, &c., Sokol, 14 N.J. Misc. 580 (Cir. Ct. 1936). Other sources from which the citations of relevant decisions can be readily acquired are 38 Am. Jur. 456 et seq., §§ 19 et seq.; 171 A.L.R. 7, 37; 29 Am. Jur. 885, § 1174; 115 A.L.R. 1062; 1 Appleman, Insurance Law 819, § 655; 7 Couch, Cyclopedia of Insurance, § 1679.
In its factual aspect we have here an instance where it is acknowledged that the plaintiff was genuinely ill for the period of 12 weeks, and where his attending physician determined in the exercise of his professional judgment that the plaintiff, despite his continued sickness, did not require as many as two treatments a week after the first two weeks.
It seems also to be conceded that the plaintiff would be entitled to the claimed benefits were it not for the aforementioned *580 amendment ordained by the board of directors of the association on October 5, 1949.
Thus the appellate inquiry centers predominantly upon the validity, vel non, of the amendatory provision in its relation to a member occupying the situation of the plaintiff.
There can be no serious doubt that our own courts will protect the valuable contractual right of the beneficiary acquired by virtue of such a certificate. Intrinsically the certificate confers upon the member of the society a type of insurance.
A retrospective survey of the subject reveals historically that the so-called mutual benefit societies were originally organized principally to inculcate and promote the spirit of fraternity, benevolence, and charity amongst their members. Soon thereafter such societies additionally introduced to their membership sickness and burial benefits, and in many cases a form of life insurance, at an exceedingly moderate and inadequate premium cost. Experience forewarned them of the imprudence of that pursuit in defiance of sound actuarial principles, and financial losses gravely threatened them.
It was in such an exigency that the news spread, and quite universally the societies recognized the stern realities of economic forces and resorted to the use of the open contract clause in their certificates which provided that members would be bound by amendments to by-laws adopted subsequent to the date of their admission to membership.
Conflicting and complex considerations were immediately implicated. On the one side was the undeniable fact that the unbusinesslike practices of the societies in this field would inevitably guide them toward insolvency, while on the other hand to diminish or otherwise circumscribe the availability of existing benefit payments would visit an apparent injustice on the older members who, in numerous instances, had continuously paid their assessments over a long span of time.
Recourse to the courts naturally eventuated, and numerous indeed are the pertinent decisions illustrative of the drift *581 and course of the divergency of opinion. Our own courts, as disclosed by the authorities previously cited, have adhered to the view that benefit certificates of this nature and import confer a vested interest upon the member which may not be impaired by a subsequent amendment, even though the power to amend be reserved in general terms, and that the subsequent alteration to have validity must be reasonable and be adopted in furtherance of the contractual right.
Many, also, are the reported decisions relative to the interpretation and construction of provisions requiring the member's confinement to the home and his regular care and treatment by a physician. Some of such like provisions employ the words "medical attendance," others, "medical treatment," "medical care"; a few require that the member receive the treatment and care "in his home." See, 1 Appleman, Insurance Law 819, § 655.
In construing these conditional provisions, it is of material significance to recognize their basic object and purpose and rationalize from that point of view. Seemingly the paramount object is to guard the society against false or fraudulent claims. Davidson v. First American Ins. Co., 129 Neb. 184, 261 N.W. 144 (Sup. Ct. 1935); to establish the good faith of the claim, National Life Ins. Co. v. Patrick, 28 Ohio App. 267, 162 N.E. 680 (Ct. App. 1927). The attendance and treatment of a physician is evidentiary of the sincerity and merit of the claim where those qualifying elements are in doubt. A practical and intelligent rather than a strictly literal operative effect should be ascribed to a conditional requirement of this signification according to the circumstances.
In the present case, the existence of the disability of the member, its actual duration, and the absence of his need of regular and continuous medical care were admitted. A by-law obliging the member of the society, in order to avoid a forfeiture of his sick benefits in such circumstances, to have his physician needlessly administer to him a placebo twice weekly is unreasonable, if not fantastic and absurd. The courts are disinclined to enforce the performance of *582 futile acts, useless things, and idle formalities. Only a dogmatic apostle of exact literal construction servile to narrow syllogistic reasoning could endeavor to sustain such an obviously purposeless prerequisite. It is the sickness in fact for which the benefits are accorded. Where the intended reason for the application of such a conditional clause disappears, its legal effectiveness vanishes with it. Cf. North American Acc. Ins. Co. v. Henderson, 180 Miss. 395, 177 So. 528, 530 (Sup. Ct. 1937).
It has been said many times that our courts in the application of the rules and principles of law cannot be insensible to the factual surroundings of the particular case. The law must be recognized as a living organism that moves in response to the dictates of reason and justice.
Affirmed.