John R. RUSSELL, Plaintiff-Appellee,

v.

The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, Defendant-
Appellant.

No. 29361.

United States Court of Appeals,
Fifth Circuit.

Jan. 25, 1971.

Rehearing Denied March 10, 1971.

---

Donald O. Collins, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant-appellant.

Reginald T. Badeaux, Jr., J. Michael Cumberland, Badeaux & Discon, New Orleans, La., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and WISDOM and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The central issue on this appeal is whether the insured was totally disabled within the terms of Prudential's group disability insurance policy.

After serving six years as a salesman for Georgia-Pacific Corporation, John R. Russell was promoted in 1958 to the position of manager of the company's distribution center in New Orleans, Louisiana. As the center's manager, Russell had complete responsibility for personnel (25 to 30 persons), sales, purchasing, inventories, customer relations, and contract negotiations. During his tenure as manager, Russell elected to take out disability insurance with the Prudential Insurance Company of America under a contract which in pertinent part provides as follows:

" 'Total Disability'

(a) During the portion of any period of disability not exceeding the Initial Duration (schedule determination) 'total disability' means the complete inability of the Employee due to sickness or injury to perform any and every duty pertaining to his occupation with the Policyholder;

In no event, however, shall 'total disability' exist for any purpose of this

Rider during any period in which the Employee (i) is engaged in his or any other gainful occupation, * * *".

The physical infirmities which form the basis of this action for disability benefits began in 1953 and 1954 when Russell underwent two operations on his esophagus resulting in a permanent gastrointestinal abnormality which causes weakness after eating and inability to sleep comfortably and normally. In 1965 Russell was hospitalized and put into traction for cervical osteoarthritis, a condition whereby the disks between the neck vertebrae degenerate causing pain in varying degrees of severity. The condition persisted and Russell used a home traction set, a cervical collar, and muscle relaxants in an attempt to relieve the pain. Later in 1965 the insured was struck with inflammation of the optic nerve (optic neuritis) which permanently damaged his eyesight so that reading for long intervals or under mental pressure caused undue fatigue. Finally, the insured had a gall bladder operation in the summer of 1966, and in December of that year he was dismissed from his job at Georgia-Pacific because insufficient attention was being given to various aspects of the business and also because the profits of the New Orleans branch were not as high as the company anticipated.

Three months after his discharge the insured found work as a sales consultant for Pascagoula Veneer Company, a company engaged in a wood products business similar to that of Georgia-Pacific. This position lasted for three months and then terminated when the insured was injured in an automobile accident.

Subsequently, in June of 1967, the insured filed a disability claim with Prudential Insurance Company asserting that he suffered total disability while employed by Georgia-Pacific and that he was entitled to twenty-four monthly payments to commence six months from the date of employment termination according to the terms of the policy. Prudential, however, remained steadfast in its refusal to honor the claim even after re-

questing and receiving an attending physician's report on the insured's medical condition during his employment at Georgia-Pacific. The insured filed suit for the benefits in December, 1967.

In this same month the insured was employed as a salesman at Evans Products Company but the job ended ten months later when the insured was unable to successfully handle the work.

After a trial before the district court, the trial judge held that, despite the thirteen months' employment with Pascagoula Veneer Company and Evans Products Company, the insured was totally disabled within the policy definition and thus entitled to recover twenty-four months of disability payments plus penalties and attorney's fees as provided in Louisiana Revised Statutes § 22:657. We affirm.

The law is now well settled in Louisiana as elsewhere that the term "total disability" does not mean absolute helplessness on the part of the insured; benefits may be recovered where the insured cannot perform all the substantial and material acts necessary to the prosecution of his business or occupation in the usual and customary manner. Rambin v. Continental Casualty Company (1966), La.App., 186 So.2d 861; Scalia v. Travelers Insurance Company (1968), La.App., 210 So.2d 373. See also Couch

On Insurance, § 53:67, 2d ed. ( ); Vol. 1A, Appelman, Insurance Law and Practice, § 651 (1965). Appellant Prudential vigorously maintains this well-established rule does not apply to the case at bar for the reason of the provision in the policy which prohibits disability benefits when the insured is "engaged in his or any other gainful occupation". By becoming employed on two separate occasions, first with Pascagoula Veneer Company and then with Evans Products Company, Prudential argues the insured obtained "gainful employment" and thereby removed himself from coverage under the policy. We cannot accept such an interpretation. Starting with the proposition that ambiguous language must be construed strictly against the insurer, see, e. g., Rambin v. Continental Casualty Company, supra, we construe the phrase "his or any other gainful employment" to refer to a denial of benefits only when the insured obtains other work either identical to or substantially the same as the type of employment initially covered by the policy. Thus, Russell's employment subsequent to his discharge from Georgia-Pacific was not gainful and does not prevent his recovery of disability benefits unless the employment was similar in responsibility and remuneration to his position as manager of the Georgia-Pacific distribution center in New Orleans.[1]

1. See Smith v. Mutual Life Insurance Co. of New York, 1936, La.App., 165 So. 498, for an example of the restrictive interpretation the Louisiana courts place on the term, "gainful occupation", as used in disability insurance policies:

"To entitle plaintiff to recover, it is only necessary that his disability be of such character as continuously renders it impossible for him to follow a gainful occupation. Total disability to perform any sort of labor or service. or a condition of helplessness, is not necessary to a recovery. * * * 'Gainful' is defined by Webster as profitable, advantageous, lucrative. Therefore, if the disability with which plaintiff is afflicted continuously renders it impossible for him to profitably follow the only occupation he is qualified to follow, viz., farming, he is en-

titled to recover. The fact that he is mentally sound and would be qualified to profitably perform clerical service, if specially trained so to do, does not unfavorably affect his right to recover." 165 So. at 500.

See also Ayres v. New York Life Insurance Co., 1951, 219 La. 945, 54 So.2d 409, where the Louisiana Supreme Court construed a disability policy denying recovery unless the insured is "wholly prevented from performing any work":

"It is well settled that policy provisions stipulating for benefits 'whenever the Insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work', etc., do not contemplate that the insured is to be rendered absolutely helpless in order to recover but only that he be unable to do substantially all

Regarding Prudential's contention that Russell's employment after his discharge from Georgia-Pacific was substantially the same as his work as manager of the distribution center, thus preventing a disability qualification, we find the language of the district court particularly dispositive of the issue. The post-discharge employment was "essentially consultive in nature rather than administrative, and did not involve as much responsibility as did the position with Georgia-Pacific". More specifically, the court held the employment "entailed no responsibility for personnel, inventories, profits, collections, or other similar administrative functions, allowed greater flexibility in time, and involved almost no paper work". Cognizant of our duty to refrain from disturbing the trial court's finding unless it is clearly erroneous,[2] we hold there was ample evidence that the insured was disabled from performing the functions of his job in the usual and customary manner. As branch manager, the insured had complete responsibility for sales and distribution of Georgia-Pacific's products in the New Orleans district, a large territory extending north to Jackson, Mississippi, and west to Baton Rouge and Houma, Louisiana. The insured received an approximate annual salary of $19,000[3] for which he was expected to work long hours beyond the normal five-day business week, both in the performance of routine matters and in handling the extraordinary matters. The cumulative effect of the impaired vision, the incessant neck pain, and the gas-trointestinal abnormality worked to restrict the insured's ability to handle vital correspondence, and to deprive him of that degree of energy and stamina necessary to the successful fulfillment of such a demanding managerial position. The record reveals that the insured never felt rested, that he tired easily, that he was constantly irritated by the neck pain, and that reading for extended periods caused excessive fatigue. In view of the plethoric testimony concerning the insured's physical deterioration and resulting inability to adequately meet all the demands of his position as branch manager, we cannot say the district court erred in holding that Russell was disabled under the terms of the policy.

After the disability occurs the policy provides for benefits to be calculated by taking 66⅔ percent of the employee's earnings "exclusive of bonus and overtime pay". Russell's annual salary of $19,000 was made up of $12,600 in base pay and $6,400 as a percentage of the company's profits from the distribution center. Prudential claims the $6,400 was a bonus and thus erroneously included in the computation of benefits by the trial court. We disagree, however, and hold that the percentage of profits was in the nature of a commission or incentive pay and does not have that quality of unexpectedness implied by the word "bonus".[4]

In addition to disability benefits, the district court imposed Section 22:657 of Louisiana Revised Statutes[5]

the material acts necessary to the prosecution of his business or occupation in his customary and usual manner." 54 So.2d at 413.

2. Rule 52(a), Title 28, U.S.C.; Pennington v. Colonial Pipeline Company, 5 Cir., 1968, 387 F.2d 903.

3. In the two years that passed after his dismissal from Georgia-Pacific, Russell averaged about $7,000 annually; whereas, before, he was earning about $19,000 annually.

4. Webster's Third New International Dictionary, G. and C. Merriam Co., 1964, defines bonus as "something given or received that is over and above what is expected". Cf. Lakos v. Saliaris, 4 Cir., 1940, 116 F.2d 440.

5. L.R.S. § 22:657 provides:
"All claims arising under the terms of health and accident contracts issued in this state shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his

which authorizes a penalty equal to the benefits recovered plus attorney's fees when the insurer is unreasonable in withholding payment of a claim. We find little merit in the contention that Prudential acted reasonably in view of their refusal to investigate the claim after receiving a medical report from insured's physician. The report alleged circumstances concerning Russell's disability which should have prompted Prudential to process the claim instead of stating that the claim would neither be allowed nor disallowed due to insured's failure to fill out a company form which was admittedly unnecessary to the substance of the disability contention.

We also reject Prudential's assertion that Dennis v. Business Men's Assurance Company of America, 1965, La. App., 175 So.2d 431, prohibits the application of Louisiana Revised Statutes § 22:657. In *Dennis,* supra, the state court held the insurance policy was not issued in Louisiana and hence the penalty provisions of L.R.S. § 22:657 did not apply where the insured was a resident of another stae. Such facts are by no stretch of the imagination analogous to the instant case where the insured resided, worked, and became disabled in Louisiana.

 Prudential's final assignment of error is that the trial court failed to uphold the clause in the policy which provides that recovery of benefits is conditioned upon disability occurring during employment and while the insured is under the regular care of a licensed physician. Whether or not disability arose during employment is a factual determination for which there is adequate support in the record from the testimony of the medical witnesses who treated the

insured; from the testimony of the insured's secretary; and from the testimony of insured himself. Since the sole purpose of the provision requiring the regular care of a physician is to allow the insurer the means to assure itself of the fact that the insured is actually disabled, the provision will not be literally enforced where, as here, there is other available proof of disability and no useful purpose would be served by such enforcement. See Mathews v. Louisiana Industrial Life Insurance Company, 1942, La.App., 11 So.2d 80.

Affirmed.

---

guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases. Amended and reenacted Acts 1958, No. 125."