**David A. STINNETT, Plaintiff,**

**v.**

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,
Defendant.**

**No. EV 98–98–C–T/H.**

United States District Court,
S.D. Indiana,
Evansville Division.

Sept. 18, 1999.

Alan N. Shovers, Kahn Dees Donovan & Kahn, Evansville, IN, for Plaintiff.

Ross E. Rudolph, Mattingly, Rudolph, Fine & Porter, Evansville, IN, Maurice J. McSweeney, Foley & Lardner, Milwaukee, WI, for Defendant.

### Entry on Cross–Motions for Summary Judgment

TINDER, District Judge.

The Plaintiff, David A. Stinnett, brings this breach of contract action against the Defendant, Northwestern Mutual Life Insurance Company, alleging that the Defendant owes him disability payments under certain policies of insurance. Both parties have moved for summary judgment. The court rules as follows.

### I. Factual and Procedural Background

David A. Stinnett, an Indiana resident, contracted with the Northwestern Mutual Life Insurance Company ("Northwestern"), a corporation organized and existing under the laws of the State of Wisconsin, for six separate policies of disability insurance, each of which provides for payment of a monetary benefit in the event Mr. Stinnett suffers a qualifying disability. Though the policy language varies slightly from contract to contract, each policy also requires that the insured—Mr. Stinnett—be under the care of a licensed physician during the period of disability in order to recover benefits.

On December 23, 1993, Mr. Stinnett learned that a group of former insurance clients were contemplating legal action against him for alleged unfair selling practices. This threat of legal action had a negative impact on his psychological health and, he claims, triggered the onset of depression. Mr. Stinnett did not, however, seek treatment for depression until September 13, 1995.

On October 19, 1995, Mr. Stinnett filed a claim for disability benefits under his Northwestern disability insurance policies, alleging that he was disabled because of depression. After investigating his claim, on February 13, 1996, Northwestern partially approved his claim for disability benefits. It determined that his disability onset date was September 13, 1995—the date he first saw a licensed physician for his condition and could provide medical evidence of his disability.

On January 26, 1998, Mr. Stinnett sought retroactive benefits under the disability polices for the period between December 23, 1993 and September 13, 1995. Northwestern denied payment of benefits for that time period.

On May 8, 1998, the Plaintiff commenced this action in the Vanderburgh Circuit Court seeking payment of disability benefits for the aforementioned time period. The Defendant Northwestern filed a Notice of Removal, removing this action to this court.

On January 31, 1999, the Plaintiff filed his Motion for Summary Judgment with supporting brief and evidentiary materials. On February 16, 1999, the Defendant filed its Cross–Motion for Summary Judgment with supporting brief and evidentiary materials.

### II. Summary Judgment Standard

Summary judgment should be granted if the movant demonstrates through the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). If the movant meets this burden, then the nonmovant must set forth specific facts showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 418 (7th Cir.1998). In deciding whether there is a genuine issue of material fact, the court views the evidence in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A fact is material if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Analysis

Mr. Stinnett moves for summary judgment, contending that he can recover disability benefits for the time period of December 23, 1993 to September 13, 1995, because there is proof that he suffered from a disability during that period even though he was not under the care of a physician.

Northwestern contends that Mr. Stinnett's motion must be denied for two reasons: (1) because of a lack of proof of a disability for the relevant time period, and (2) because valid contractual provisions require him to be under the care of a licensed physician in order to be entitled to disability benefits and he was not under such care during the relevant time period. For these same reasons, Northwestern moves for summary judgment in its favor.

At the outset, it is noted that neither party directly addresses the matter of what substantive law should be applied in this case. Mr. Stinnett ignores the matter, and Northwestern apparently assumes that Indiana substantive law applies. (This inference is drawn from Northwestern's reliance on Indiana case law concerning policies of insurance.) However, the court determines that Indiana substantive law applies to this diversity action.

 In deciding which substantive law applies, the court must apply the choice of law rules of the state in which it sits—Indiana. *See Klaxon Co. v. Stentor*

*Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Indiana applies a "most intimate contacts" approach to contract claims. *See W.H. Barber Co. v. Hughes*, 223 Ind. 570, 63 N.E.2d 417, 423 (1945); *Dohm & Nelke v. Wilson Foods Corp.*, 531 N.E.2d 512, 513 (Ind.Ct.App. 1988). Under that approach, "[t]he court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact." *W.H. Barber Co.*, 63 N.E.2d at 423; *see also Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 233 (Ind.Ct.App.1997), *trans. denied.* The following factors have been identified as representative of those which the court should consider: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See Schaffert*, 687 N.E.2d at 233; *Eby v. York–Div., Borg–Warner*, 455 N.E.2d 623, 626 (Ind.Ct.App.1983).

 Applying these factors, the court finds that Indiana has the most intimate contacts with this action. The first two factors do not assist the court's inquiry as there is no indication as to the places of contracting and negotiation. The third factor has little relevance because of the nature of a disability insurance policy; the policy did not require the performance of any act. *See Schaffert*, 687 N.E.2d at 233 (life insurance policy). The location of the subject matter of the contract is of no benefit either. *See id.* That leaves the fifth factor—the place of residence, incorporation and business of the parties. Mr. Stinnett, the insured, is an Indiana resident, whereas, Northwestern is incorporated in Wisconsin. Indiana, however, has the greater interest in the outcome of this controversy. The purpose of a disability insurance policy is to protect the insured's income lost due to a disability. Because

Mr. Stinnett is a resident of Indiana, Indiana has a greater interest in protecting his income. In furtherance of that greater interest, Indiana's substantive law should be applied to this controversy. Therefore, the court concludes that Indiana has the most intimate contacts with this action.

Furthermore, Mr. Stinnett has not contested Northwestern's position that Indiana substantive law applies. And, in any event, as between the laws of Wisconsin and the laws of Indiana, the choice makes no difference in the outcome of this case. *See Hampton Plains Realty Co. v. Cohen,* 214 Wis. 128, 252 N.W. 572, 573 (1934); *Coutts v. Wisconsin Retirement Bd.,* 201 Wis.2d 178, 547 N.W.2d 821, 826 (Ct.App.1996) ("Unambiguous contract terms are given their ordinary dictionary meaning."), *aff'd,* 209 Wis.2d 655, 562 N.W.2d 917 (1997).

■ Under Indiana law, "clear and unambiguous policy language must be given its ordinary meaning." *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). Unambiguous terms must be enforced even if the terms limit the insurer's liability. *See Trisler v. Indiana Ins. Co.,* 575 N.E.2d 1021, 1023 (Ind.Ct.App. 1991); *Guzorek,* 690 N.E.2d at 669.

■ As a general rule, provisions in policies of disability insurance requiring that the insured be under the care of a licensed physician during the period of disability in order to receive benefits are enforceable. *See* 15 Couch on Insurance 3d § 146:25 (3d ed.1998). It is undisputed that each of the policies of insurance at issue contains such a provision. Mr. Stinnett, however, argues that the court should not enforce these provisions. He correctly points out that courts have not always enforced such provisions. (Br. in Support of Pl.'s Mot. for Summ. J. at 6–7 (citing *Russell v. The Prudential Ins. Co. of America,* 437 F.2d 602 (5th Cir.1971); *Dixon v. Pacific Mut. Life Ins. Co.,* 151 F.Supp. 106 (S.D.N.Y.1957); *Massachusetts Bonding & Ins. Co. v. Springston,* 283 P.2d 819 (Okla.1955); *Penrose v. Com-*

*mercial Travelers Ins. Co.,* 75 Idaho 524, 275 P.2d 969 (1954); *World Ins. Co. v. McKenzie,* 212 Miss. 809, 55 So.2d 462 (1951); *Schoeman v. Loyal Protective Life Ins. Co. of Mass.,* 239 Iowa 664, 32 N.W.2d 212 (1948); *Davidson v. First Am. Ins. Co.,* 129 Neb. 184, 261 N.W. 144 (1935); *Sullivan v. North Am. Acc. Ins. Co.,* 150 A.2d 467 (D.C.1959); *Yager v. American Life Ins. Assoc.,* 44 N.J.Super. 575, 131 A.2d 312 (1957))). He asserts that these cases establish that such provisions only serve an evidentiary purpose and should not be enforced when there is other evidence of an insured's disability. Here lies his error.

As the *Sullivan* court summarized, "if the existence of the disability is established, and there is a reasonable ground to excuse regular treatment by a physician, recovery for the disability will not be barred by a failure to comply literally with the policy provision." *Sullivan,* 150 A.2d at 472. The *Sullivan* court succinctly explained the rationale supporting this rule:

This rule is justified, first, on the principle that the law does not require the performance of futile acts, and secondly, because the real purpose of the medical care clause is evidentiary, to guard against fraudulent claims; consequently, if the claim is meritorious, there is no need to hold the insured to strict compliance with the provisions.

*Id.*

The issue in the cases relied upon by Mr. Stinnett was not the disability onset date, but rather the lack of continuing medical treatment once the disability had been established. *See Russell,* 437 F.2d at 604 (insured underwent two operations and was hospitalized for conditions giving rise to disability and later used home traction, a cervical collar and muscle relaxants to treat one condition); *Dixon,* 151 F.Supp. at 107 (plaintiff had sought treatment for severe dermatitis but discontinued when treatment became ineffective); *Springston,* 283 P.2d at 820 (insured had been committed to mental health institu-

tion because of condition caused by Parkinson's disease);*Sullivan,* 150 A.2d at 469, 472 (insured discontinued physician visits for treatment of disability); *Penrose,* 275 P.2d at 971 (insured suffered heart attack and had been hospitalized); *McKenzie,* 55 So.2d at 463, 467 (insured previously had consulted physician for arthritis and received pain medication); *Schoeman,* 32 N.W.2d at 214 (stating issue as whether plaintiff was totally disabled for relevant time period); *Davidson,* 261 N.W. at 147 (insured had obtained medical attendance for earlier time period); *Yager,* 131 A.2d at 314 (plaintiff became incapacitated by illness and his sickness continued for 12 weeks; existence and duration of disability was admitted). Thus, the authorities upon which Mr. Stinnett relies in seeking summary judgment are inapposite.

Moreover, with a single exception—*Russell*—which is discussed *infra,* in each of these cases, there was evidence upon which the court found that requiring the care of a physician would have been futile or that the plaintiff could not avail himself of such care. *See Sullivan,* 150 A.2d at 472 (finding "more than adequate grounds to excuse [the] failure to submit to regular attendance and treatment by a doctor" where the insured was no longer able to pay expense of medical care); *Dixon,* 151 F.Supp. at 107 (plaintiff's ailment was severe dermatitis which had been resistant to prior regular medical treatment); *Springston,* 283 P.2d at 823 (insured was admittedly totally disabled by Parkinson's disease and his condition could not have been improved by further, regular treatment by a physician); *Penrose,* 275 P.2d at 975 (attending physician testified that there was nothing he could do for insured other than advise him to rest and refrain from working); *McKenzie,* 55 So.2d at 463, 467 (insured suffered from incurable arthritis which did not require the regular attendance of a physician); *Schoeman,* 32 N.W.2d at 217 (evidence established that at one point none of the physicians contacted would come to the insured's home where he was confined to treat him and once he could travel to doctors' offices,

some of them were too busy to see him); *Davidson,* 261 N.W. at 147 (evidence that insured could not benefit by the weekly attendance of a physician); *Yager,* 131 A.2d at 314–15 (attending physician determined that his services were not reasonably required). There is absolutely no evidence that a physician's treatment of Mr. Stinnett's alleged depression during the relevant time period would have been a mere futility. There is no evidence that his alleged depression was untreatable at that time. Nor is there evidence, as in *Sullivan* and *Schoeman,* that Mr. Stinnett could not avail himself of a physician's care. Thus, the cases upon which Mr. Stinnett relies are once again distinguishable from the instant case.

Mr. Stinnett suggests that the fact that his claimed disability is depression should excuse his failure to comply with the physician care requirement. He offers the opinions of his psychiatrist, Louis B. Cady, M.D., that: (1) persons suffering from depression commonly do not seek medical attention immediately; and (2) Mr. Stinnett did not seek medical attention immediately because he failed to recognize that he was suffering from depression. He also offers his own sworn statement corroborating Dr. Cady's latter opinion.

However, even when these statements are taken as true, Mr. Stinnett has not presented sufficient evidence to justify his failure to comply with the policies' provisions. He alleges an onset date of December 23, 1993, yet he did not seek medical attention until more than 20 months later. No reasonable person could conclude that not seeking medical attention for more than 20 months equates with not seeking medical attention "immediately." This is particularly so when it is claimed that the unrecognized depression was totally disabling and was totally disabling for the entire 20 month period. Further, Mr. Stinnett has offered no evidence to establish when he realized that he had depression such that he should have sought medical care. Besides, there simply is no

evidence that a physician's care of Mr. Stinnett's depression at any time from December 23, 1993, to September 15, 1995, would have been futile. Nor is there any evidence that he simply could not avail himself of such care either because of financial constraints or the unavailability of any physicians. Thus, the authorities upon which Mr. Stinnett relies do not support his argument that the court should disregard the clear policy provisions requiring physician care simply because he did not recognize he had depression.

As to *Russell*, there the court concluded that the policy provision requiring the regular care of a licensed physician should not be enforced where there was "other available proof of disability." 437 F.2d at 607. This proof consisted of testimony from the insured, the insured's secretary, and witnesses who treated the insured, *id.*, and was described by the court as "plethoric testimony." *Id.* at 606. In holding the provision not enforceable, the court reasoned that "the sole purpose of the provision ... is to allow the insurer the means to assure itself of the fact that the insured is actually disabled...." *Id.* This court finds *Russell* unpersuasive for several reasons.

First, this court disagrees that the evidentiary purpose is the only purpose of physician care provisions in disability policies. While the evidentiary purpose may be the primary purpose, such provisions serve the additional purpose of minimizing the insurer's loss under the policy in cases in which the insured's disability can benefit from a · physician's care. *See, e.g., Davidson*, 261 N.W. at 147 (noting that if the insured could have benefitted from a physician's weekly attendance, then the failure to comply with the policy's provision requiring such attendance could have contributed to the insurer's loss). As Northwestern maintains, such provisions encourage insureds to seek prompt medical treatment for their disabling conditions. Early treatment often can avoid further deterioration of a disabling condition or speed the insured's recovery from the condition, or both. Thus, such provi-

sions can serve the purpose of protecting the insurer from unnecessary harm. There is no evidence, and Mr. Stinnett makes no claim, that earlier treatment of his depression, that is treatment from December 23, 1993 to September 15, 1995, could not have ameliorated his condition, prevented its further deterioration, or sped him on the path to recovery.

Even if preventing fraudulent claims were the only purpose of physician care provisions in disability policies, *Russell* nevertheless is distinguishable. In that case the insured sought medical treatment at the onset of the physical infirmities giving rise to his claim for disability benefits. *See Russell*, 437 F.2d at 604. Mr. Stinnett, in contrast, did not seek medical care at the claimed onset of the condition upon which he bases his claim for disability benefits. Thus, *Russell* presented a factual scenario quite different from that presented in the instant case.

It is undisputed that the policies pursuant to which Mr. Stinnett seeks to recover disability benefits all contain express provisions conditioning the recovery of benefits on the insured's being under the care of a licensed physician during the period of disability. Mr. Stinnett concedes that he was not under the care of a licensed physician from December 23, 1993, to September 13, 1995. Thus, applying the unambiguous terms of the policies in question, Mr. Stinnett is not entitled to recover disability benefits for that time period.

■ Moreover, his pleas to disregard these clear, unambiguous policy terms are in vain. Excusing compliance with policy provisions that require physician treatment during a claimed disability period is justified only when the existence of the disability is clearly established and there is a rational basis for excusing such treatment. *Sullivan*, 150 A.2d at 472. Neither has been shown in this case. Even assuming that Mr. Stinnett has proffered sufficient evidence that he suffered from depression and this condition constituted a disability during the relevant time period,

he has not come forward with any evidence that would bring his situation within the exception to the general rule that physician care provisions in disability insurance policies are enforceable.[1]

And, as explained, guarding against fraudulent claims is not the only purpose furthered by these provisions.

The court holds that the policies' provisions requiring that Mr. Stinnett be under the care of a licensed physician during the period of disability in order to recover disability benefits are valid and enforceable.[2] Because he was not under the care of a licensed physician from December 23, 1993, to September 13, 1995, he is not entitled to recover disability benefits for that time period. Accordingly, Mr. Stinnett's motion for summary judgment must be **DENIED** and Northwestern's cross-motion for summary judgment must be **GRANTED**.

### IV. Conclusion

From December 23, 1993, to September 13, 1995, Mr. Stinnett failed to comply with the provisions in the disability policies at issue requiring him to be under a licensed physician's care. Therefore, he is not entitled to any benefits under the policies for that time period. Consequently, Mr. Stinnett's motion for summary judgment is **DENIED** and Northwestern's motion for summary judgment is **GRANTED**.

The Clerk shall enter final judgment in accordance with this entry.

---

1. Mr. Stinnett claims that Northwestern has never denied that he was disabled during the relevant time period. Not so. It cannot be any clearer, from Northwestern's submissions both in opposition to Mr. Stinnett's summary judgment motion and in support of its own motion as well as its arguments, that it contests Mr. Stinnett's claim of disability during the relevant time period. This is yet another distinction between this case and *Russell* where the sole basis for the insurer's refusal to pay disability benefits was the lack of physician care as required by the policy.

2. Having so decided, the court need not consider whether Mr. Stinnett suffered a qualifying disability under the terms of those policies during the time period in question.